**In re ASBESTOS LITIGATION (MERGENTHALER).**

Superior Court of Delaware,
New Castle County.

Submitted: Feb. 21, 1986.
Decided: March 21, 1986.

Robert Jacobs, Thomas C. Crumplar, and Douglas B. Canfield, of Jacobs and Crumplar, Wilmington, for plaintiffs.

Mary Pat Trostle, of Biggs & Battaglia, Wilmington, for Champlain Cable, Hercules, Haveg Industries, Inc.

James W. Semple, of Morris, James, Hitchens & Williams, Wilmington, for Herty Foundation.

Stephen W. Spence, of Heckler, Cattie & Phillips, Wilmington, for John-Manville.

Robert B. Young, Dover, for Ins. Co. of North America.

J.R. Julian, of J.R. Julian, P.A., Wilmington, for GAF.

Walter L. Pepperman, II, and Donald E. Reid, of Morris, Nichols, Arsht & Tunnell, Wilmington, for Owens Illinois, Huxley.

James T. McKinstry, of Richards, Layton & Finger, Wilmington, for Owens Corning Fiberglas.

Douglas B. Catts, of Schmittinger and Rodriguez, P.A., Dover, for Celotex.

Somers S. Price, Jr., of Potter, Anderson and Corroon, Wilmington, for Pennwalt.

John A. Elzufon, of Elzufon and Bailey, Wilmington, for Gale.

James F. Kipp, of Trzuskowski, Kipp, Kelleher and Pearce, Wilmington, for Acoa.

Warren B. Burt, Wilmington, for Oy Partek A.B.

Roger A. Akin, of Sawyer and Akin, Wilmington, for Pacor 48 Insulation.

Richard P.S. Hannum, of Prickett, Jones, Elliot, Kristol and Schnee, Wilmington, for Keene Corp.

C. Scott Reese, of Cooch & Taylor, Wilmington, for Raymark.

John C. Phillips, Jr., of Phillips & Snyder, Wilmington, for Mead, Mett and Powhatan.

Jeffrey S. Marlin, of Tybout, Redfearn, Casarino & Pell, Wilmington, for Special Materials, York Industries, Employers Mut. Liability Ins. Co. of Wisconsin.

William C. Foster, of Kelly, Harrington, McLaughlin & Foster, Philadelphia, Pa., for Liberty Mut. Ins. Co.

James T. Perry, of Komisaroff & Perry, Wilmington, for Eagle Picher.

Edmund D. Lyons, Jr., of Aerenson, Ferrara & Lyons, Wilmington, for Parker Hanofin.

James F. Bailey, of Elzufon & Bailey, Wilmington, for County Insulation.

Michael J. Goodrick, of Theisan, Lank, Mulford & Goldberg, P.A., Wilmington, for Robco, Inc.

Thomas Herlihy, of Herlihy & Weir, Wilmington, for Anchor Packing.

Stephen Calder, Palmer, Biezup & Henderson, Philadelphia, Pa., for Anchor Packing.

Richard F. Rago, Wilmington, for Liberty Mut.

POPPITI, Judge.

This is a decision on Herty Foundation's Motion for Summary Judgment against all plaintiffs in the above actions. The motion in substantial part presents the question of whether the so-called "sophisticated purchaser" defense is available in Delaware. Some background facts are necessary to place the issue in perspective. Except where otherwise noted, these facts are undisputed in the record before the Court.

The Herty Foundation (hereinafter "Herty") is a non-profit, federally tax-exempt trusteeship of the State of Georgia. It was formed to promote Georgia in the pulp and paper field and accordingly works primarily with pulp and paper companies and those who wish to market products within or produce equipment for the pulp and paper industry. Herty's expertise extends to all types of fibrous materials.

Haveg Industries, Inc. (hereinafter "Haveg") is a manufacturer of industrial products. From 1933 to 1955 it was a wholly-owned subsidiary of Continental Diamond and Fiber Company. Between 1955 and 1964 it was a subsidiary of the Budd Company. From 1964 to 1980 it was a wholly-owned subsidiary of Hercules, Inc. Haveg was sold to Ametek in 1980.

Prior to 1980, Haveg produced several products containing asbestos, including asbestos cement, a plastic made from raw asbestos and phenol formaldehyde resin, and chemical tanks and pipes. Beginning in 1971, Haveg started to produce a specialized type of piping with a trade name of "Chemtite." The "Chemtite" process required the use of raw blue crocidolite asbestos fibers and blue asbestos paper.

In the mid–1970s, Haveg began to search for a reliable supplier of blue asbestos paper. It is somewhat unclear precisely how contact between Haveg and Herty was established: whether Haveg directly initiated contact or whether contact was arranged by a third company, Special Materials, Inc., who had Haveg as a customer. In any event, the record is clear that Herty did not initiate contact.

In mid–1975, Haveg asked Herty if it could produce the required blue asbestos paper following certain specifications. There appears to be some dispute whether these specifications were of a technical nature or just standard engineering requirements. It is undisputed, however, that Haveg sent a sample of the required asbestos paper to Herty to duplicate. Herty produced a sample in January of 1976 which it sent to Haveg, who tested it and found that it met or exceeded Haveg's specification requirements. A contract was formed, whereupon Herty began producing the blue asbestos for Haveg. It did so from April 1976 to January 1979. At first, the raw asbestos used by Herty in producing the paper was supplied by Haveg. Later, at Haveg's request, Herty obtained the raw asbestos from the North American Asbestos Company and its successor, Continental Products Corporation.

Following Haveg's directions, Herty shipped the blue asbestos paper in rolls wrapped in brown paper or polyethylene. The rolls arrived without warning labels regarding the dangers of asbestos. It is undisputed that Haveg did not require Herty to place any warnings on the rolls. On the other hand, Herty was not prevented from applying warning labels.

When the unlabeled rolls arrived, Haveg instructed its employees to affix warning labels to the rolls, which were then stored. These warning labels had been applied since the early to mid–1970s. Although the record before the Court does not make it entirely clear, it appears the wording on the warning label was as follows:

"Caution, Contains Asbestos Fibers: Avoid Creating Dust. Breathing Asbestos Dust May Cause Serious Bodily Harm."

It should be noted that some of the plaintiff employees of Haveg deny being aware of such warning labels. In October of 1978 Haveg provided these labels to Herty for Herty to apply to the asbestos paper rolls.

The last asbestos paper produced by Herty for Haveg was in January of 1979. In 1980, Haveg ceased using either asbestos or asbestos paper.

The plaintiffs were all employees of Haveg during this time period. They all allege injuries due to exposure to asbestos. Their complaint against Herty is based on Herty's alleged failure to adequately warn the plaintiffs of the dangers of unprotected exposure to asbestos. Counts II, III and V of the complaint allege in substance that Herty either negligently (Count II), recklessly, willfully and wantonly (Count III) or in concert with others (Count V) failed to warn and instruct the plaintiffs as to the dangers associated with asbestos, and thus negligently, willfully or in concert with others injured the plaintiffs. Implicit in this is that Herty had a duty to warn the plaintiffs. Count IV of the complaint alleges in substance that Herty violated an implied warranty of merchantability in that the asbestos goods are not fit for the ordinary purposes for which such goods are used,[1] an express warranty that the asbestos fibers are adequately contained, packaged and labeled,[2] and an implied warranty of

1. 6 *Del.C.* § 2–314 states in pertinent part:
 (1) Unless excluded or modified (section 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

 \* \* \* \* \* \*

 (2) Goods to be merchantable must be at least such as

 \* \* \* \* \* \*

 (c) are fit for the ordinary purposes for which such goods are used....

2. 6 *Del.C.* § 2–313(1) provides:
 (1) Express warranties by the seller are created as follows:
 (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that

fitness for the particular purpose for which the goods were used.[3] The plaintiffs claim breach of warranty pursuant to 6 *Del.C.* § 2–318 which provides that an implied or express warranty is not limited to the buyer of the goods, but extends to any natural person who may reasonably be expected to use the goods and is injured by the breach of warranty.[4] These warranty claims are ultimately based on Herty's alleged failure of its duty to warn.[5]

The law is clear that a product, even though "virtually faultless in design, material, and workmanship, may nevertheless be deemed defective where the manufacturer ... fails to discharge a duty to warn." *Wilhelm v. Globe Solvent Co.,* Del.Super., 373 A.2d 218, 223 (1977), *aff'd in part, rev'd in part,* Del.Supr., 411 A.2d 611 (1979), *Bly v. Otis Elevator Co.,* 4th Cir., 713 F.2d 1040, 1045 (1983) (applying Virginia law). To hold Herty liable for its failure to warn, therefore, it must first be determined whether it, as a seller, owed a duty to warn the plaintiff employees of the purchaser, Haveg.

## I.

Herty asserts a "sophisticated purchaser" defense. The basic thrust of this defense is that when a manufacturer, distributor, seller or supplier provides a product to a purchaser who is knowledgeable of the dangers of that product there is no duty to warn either the purchaser or the purchaser's employees of that danger. The suppli-

er can rely on the "sophisticated purchaser" to warn and protect its own employees.

Delaware law is not yet settled on this defense. In *Wilhelm v. Globe Solvent Co., supra,* this Court stated in dicta that where a manufacturer or distributor has no control over the purchaser's work area, the duty to warn, if it existed, would only be to warn the purchaser/employer, and where the purchaser/employer knew of the dangers, there was no duty to warn either the purchaser/employer or the employee. *Wilhelm v. Globe Solvent Co.,* 373 A.2d at 223. On appeal, the Delaware Supreme Court reversed the granting of summary judgment, finding that a material issue of fact still existed. The Court then stated that "[a]bsent full development of the facts at trial, we defer consideration of the Trial Court's ruling concerning ... the absence of any duty on the part of defendants to warn plaintiff of The dangerous propensities of the solvent." *Wilhelm v. Globe Solvent Co.,* Del.Supr., 411 A.2d 611 (1979) (ORDER). Unfortunately, the issue never proceeded to decision.

This Court is aware of only one other case applying Delaware law in a sophisticated purchaser situation, from the federal District Court of the District of Delaware. In *Cropper v. Rego Distribution Center, Inc.,* D.Del., 542 F.Supp. 1142 (1982), the District Court, in viewing Delaware law, rejected the dicta in *Wilhelm,* noting that the employee in *Wilhelm* was

the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample of model.

**3.** 6 *Del.C.* § 2–315 states:
Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

**4.** 6 *Del.C.* § 2–318 states in full:

A seller's warranty whether express or implied extends to any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section.

**5.** The plaintiffs also suggest in their brief that Herty might be held strictly accountable for the sale of asbestos paper under Delaware law because it is an inherently dangerous product. Since the of the brief, this Court has decided *In re: Asbestos Litigation,* Del.Super., C.A. No. 79C-DE–125 and 84C-MY–145, Poppiti, J. (Sept. 30, 1985), interlocutory appeal refused sub nom. *Bradley v. Pittsburgh Corning Corp.,* Del.Super., 505 A.2d 451 (1985) (ORDER), which holds that strict liability does not apply to the sale of asbestos products.

actually found to have knowledge of the danger and that the supplier had no access to the work area. The District Court noted that in its case there was a dispute as to the extent of the employee's knowledge and that it was possible for the supplier to post warnings on the product it supplied, thereby reaching the employee. *Cropper,* 542 F.Supp. at 1152. The critical issues in determining the negligence of a supplier in the view of the District Court then is whether the employee had knowledge of the danger and whether the supplier could have reached the employee with a warning. The knowledge of the purchaser/employer would appear to be irrelevant. Implicit in this decision is that a supplier may not rely on a sophisticated purchaser/employer to warn its own employees of a danger of which it is aware.

Several states have adopted in one form or another the "sophisticated purchaser" defense. This defense finds its basis in § 388 of the Restatement (Second) of Torts (1965). This section states:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.[6]

The "sophisticated purchaser" defense focuses on the issue of reasonable care that is: is it reasonable for a supplier to rely on a knowledgeable purchaser/employer to warn its employees of a known danger.

A number of courts have clearly adopted the concept that when a purchaser/employer is aware of the inherent dangers of a product, there is normally no duty on the part of the supplier to warn an employee of that purchaser. *See, e.g., McKay v. Rockwell International Corp.,* 9th Cir., 704 F.2d 444, 454 & n. 14 (1983), *cert. denied* 464 U.S. 1043, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984); *Marker v. Universal Oil Products Co.,* 10th Cir., 250 F.2d 603, 606–07 (1957) (applying Oklahoma law); *Goodbar v. Whitehead Bros.,* W.D.Va., 591 F.Supp. 552, 560–61 (1984) (applying Virginia law), *aff'd sub nom. Beale v. Hardy,* 4th Cir., 769 F.2d 213 (1985) (adopting District Court's opinion as its own); *Menna v. Johns–Manville Corp.,* D.N.J., 585 F.Supp. 1178, 1185–86 (1984) (applying New Jersey law), *aff'd,* 3d Cir., 772 F.2d 895 (1985); *In re Related Asbestos Cases,* N.D.Cal., 543 F.Supp. 1142, 1151 (1982) (predicting California law); *Littlehale v. E.I. duPont de Nemours & Co.,* S.D.N.Y., 268 F.Supp. 791, 799 (1966) (applying general maritime law and looking to the "law prevailing on the land"), *aff'd.* 2d Cir., 380 F.2d 274 (1967). *See also* W. Keeton, *Prosser and Keeton on the Law of Torts* § 96, at 686 (5th ed. 1984). Other courts, while not quite so clear, certainly indicate they would accept a sophisticated purchaser defense. *See Shell Oil Co. v. Gutierrez,* Ariz.App., 581 P.2d 271, 278 (1978) (whether a warning beyond the manufacturer's immediate vendee is required depends on the facts of the case; purchaser here did not possess a high degree of expertise involving the product); *First National Bank in Albuquerque v. Nor–Am Agricultural Products,* Ct.App., 88 N.M. 74, 537 P.2d 682, 691 (1975) (if middleman-processor had constructive knowledge of the danger, then the seller owed no duty to the ultimate consumer); *Reed v. Pennwalt Corp.,* 22 Wash.App. 718, 591 P.2d 478, 481–82 (1979) ("The sup-

---

**6.** For purposes of this summary judgment motion only, Herty concedes that it knew the chattel was likely to be dangerous for the use for which it was supplied and that Haveg's employees were not aware of those dangers. Thus, the only issue would be whether Herty exercised reasonable care to inform the employees.

plier has fulfilled its duty when it gives adequate warning to the intermediate buyer ... and the product is not in the original can, box, or form ... and it is reasonable to expect that the immediate buyer has a safety program and that it will communicate whatever is necessary to the ultimate users.")

There is, however, a split in the jurisdictions that accept the sophisticated purchaser defense as to the application of the defense. Some hold that where there is a sophisticated purchaser knowledgeable of the dangers of the product, the supplier can, as a matter of law, rely on that purchaser/employer to inform its employees. *See McKay v. Rockwell International Corp.*, 704 F.2d at 454 n. 14 ("In the case of section 388, a warning to the Navy would have been sufficient to relieve Rockwell of liability for injury to a Navy pilot."); *Marker v. Universal Oil Products Co.*, 250 F.2d at 606 ("[D]efendant, knowing that [the employer] knew of the danger of using hot catalyst and would not be expected to abuse that knowledge, owed no duty to warn ... employees ..."); *Goodbar v. Whitehead Bros.*, 591 F.Supp. at 561 ("Stated another way, when the supplier has reason to believe that the purchaser of the product will recognize the dangers associated with the product, no warnings are mandated."); *Littlehale v. E.I. duPont de Nemours & Co.*, 268 F.Supp. at 799 ("If no warning is required to be given by the manufacturer to a purchaser who is well aware of the inherent dangers of the product, there is no duty on the part of the manufacturer to warn an employee of that purchaser.") Other courts hold that where there is a sophisticated purchaser, there is no duty to warn provided that it is reasonable for the supplier to believe that the purchaser/employer will warn its employees under the circumstances. *Whitehead v. St. Joe Lead Co., Inc.*, 3d Cir., 729 F.2d 238, 253–54 (1984) (applying New Jersey law); *Menna v. Johns–Manville Corp.*, 585 F.Supp. at 1185–86; *In re Related Asbestos Cases*, 543 F.Supp. at 1151; *see Shell Oil Co. v. Gutierrez*, 581 P.2d at 278 ("There are no absolutes in determining either existence of the duty or its satisfaction.");

*Venus v. O'Hara*, 127 Ill.App.3d 19, 82 Ill.Dec. 143, 148, 468 N.E.2d 405, 410 (1984) ("Nothing in the facts as yet presented, however, suggests that they were justified in relying on the expertise of subsequent distributors ...").

In their brief the plaintiffs point out that many cases hold that the rule of law in negligence cases is that a supplier of a product must be sure to warn even where the employer is clearly knowledgeable. One case, *Neal v. Carey Canadian Mines, Ltd.*, E.D.Pa., 548 F.Supp. 357 (1982) (applying Pennsylvania law), *aff'd on other grounds sub nom. Van Buskirk v. Carey Canadian Mines, Ltd.*, 3d Cir., 760 F.2d 481 (1985), appears to support this proposition. The Court there opined that it was a "foreseeable risk that an employer with knowledge of such dangers would not warn its own employees of this danger," *Neal*, 548 F.Supp at 369, and thus the supplier could not reasonably rely on the employer. With the exception of this one case, the authorities cited by the plaintiffs to support their proposition are inapposite. In *Thomas v. Arvon Products Co.*, 424 Pa. 365, 227 A.2d 897, 899–900 (1967) the Court clearly sets out that the proper standard on the duty to warn was one of reasonable care. The Court nowhere states that it would be unreasonable to rely on a knowledgeable employer to warn the employees. In *Venus v. O'Hara*, 82 Ill.Dec. at 147, 468 N.E.2d at 409, the Court noted that most cases acknowledge that a duty to warn will rarely extend beyond warning the immediate purchaser because the supplier has neither the means of controlling the purchaser nor an opportunity to provide warnings directly to the ultimate user. Far from holding that the supplier could never rely on the sophisticated purchaser/employer, the Court merely found that on the facts there was nothing to suggest that the supplier could justifiably rely on the expertise of the subsequent distributors. *Venus v. O'Hara*, 82 Ill.Dec. at 148, 468 N.E.2d at 410. As mentioned earlier, in *First National Bank in Albuquerque*, 537 P.2d at 691, the Court of Appeals of New Mexico stated that if the purchaser could be found

to have knowledge of the dangers, the seller owed no duty to warn the ultimate user. This is directly contrary to the proposition that the plaintiffs cite the case for. In both *Davis v. Wyeth Laboratories, Inc.,* 9th Cir., 399 F.2d 121 (1968), and *Giglio v. Connecticut Light & Power Co.,* Conn. Supr., 180 Conn. 230, 429 A.2d 486 (1980), the discussions in the case were expressly limited to strict liability. The plaintiffs cannot rely on these cases for a rule of law in negligence actions. Finally, in *Shell Oil Co. v. Gutierrez,* 581 P.2d at 278, it is stated that "whether a warning beyond the manufacturer's immediate vendee is required in a particular case depends upon various factors." Thus, the plaintiffs only cite one case which might fairly be characterized as holding that in negligence cases a supplier must warn employees when the purchaser/employer is clearly knowledgeable.

It would appear, then, that some version of a "sophisticated purchaser" defense is the norm in most jurisdictions. What remains for this Court is to determine whether to adopt the defense for Delaware and if so what version should be used.

The first question is whether a supplier must warn the employer of the dangers of a product. When the employer already knows or should be aware of the dangers which the warning would cover, there would be no duty to warn on the part of the supplier. *Wilhelm v. Globe Solvent Co.,* 373 A.2d at 223; *see Bradco Oil & Gas Co. v. Youngstown Sheet & Tube Co.,* 5th Cir., 532 F.2d 501, 503–04 (1976) (applying Louisiana law) (Louisiana does not require a manufacturer to warn a sophisticated purchaser of dangers of which buyer either knows or should be aware), *cert. denied* 429 U.S. 1095, 97 S.Ct. 1111, 51 L.Ed.2d 542 (1977); *Burton v. L.O. Smith Foundry Products Co.,* 7th Cir., 529 F.2d 108, 111 (1976) (applying Indiana law) (duty to warn exists only when those to whom warning would go can reasonably be assumed to be ignorant of the facts the warning would communicate); *Marker v. Universal Oil Products Co.,* 250 F.2d at 606 (when employer and supplier both had sufficient technical knowledge, no duty existed

for supplier to warn the employer of the known danger); *Goodbar v. Whitehead Bros.,* 591 F.Supp. at 561 (when supplier has reason to believe that purchaser will recognize the dangers, no warnings are mandated).

With respect to a supplier's duty to inform those for whose use the goods are supplied, Restatement (Second) of Torts § 388(c) sets up a standard of "reasonable care." In its commentary to this section, the Restatement notes that one means of conveying information to the user is by means of a third person, but that informing "the third person through whom the chattel is supplied ... is not in all cases sufficient to relieve the supplier of liability.... The question remains whether this method gives a reasonable assurance that the information will reach those whose safety depends upon their having it." Restatement (Second) of Torts § 388 comment n (1965). Whether reasonable assurance will be given depends on the circumstances involved and on who the third person is.

"Modern life would be intolerable unless one were permitted to rely to a certain extent on others' doing what they normally do, particularly if it is their duty to do so." *Id.* An employer has a duty as well as an economic interest in not exposing its employees to unnecessary dangers. *See Goodbar v. Whitehead Bros.,* 591 F.Supp. at 560. I am convinced that ordinarily it would be unreasonable to assume that a third party who knows of a danger will pass on that dangerous product to another person without warning. *See Borel v. Fibreboard Paper Products Corp.,* 5th Cir., 493 F.2d 1076, 1091–92 (1973) (applying Texas law), *cert. denied* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); W. Keeton, *Prosser and Keeton on the Law of Torts* § 44, at 313 (5th ed. 1984). I am further convinced that this is more particularly true when the third party and the user are in an employer-employee relationship. *See Reed v. Pennwalt Corp.,* Wash. App., 591 P.2d 478, 481–82 (1979); W. Keeton, *supra,* § 44, at 318–19. In general, therefore, a supplier should normally be able to rely on a knowledgeable purchas-

er/employer to warn its employees of the hazards of a product.

This reliance on the purchaser/employer is subject, however, to the requirements of reasonableness and good faith. When, therefore, all that the supplier knows is that the purchaser/employer is knowledgeable as to the dangers of a product, that supplier may rely on the purchaser/employer to warn its employees. When, however, the supplier knows or has reason to suspect that the information will fail to reach the users of the product whose safety depends upon their knowledge of the product's true character, "the supplier may well be required to go further than to tell such a third person of the dangerous character of the article, or, if he fails to do so, to take the risk of being subjected to liability if the information is not brought home to those whom the supplier should expect to use the chattel." Restatement (Second) of Torts § 388 comment n. (1965).

■ In summary, this Court holds that when a supplier provides a product it knows to be dangerous to a purchaser/employer whom the supplier knows or reasonably believes is aware of that danger, there is no duty on the part of the supplier to warn the employees of that purchaser unless the supplier knows or has reason to suspect that the requisite warning will fail to reach the employees, the users of the product.

It remains, therefore, to apply this rule to the facts of this case. Because this is a motion for summary judgment, Herty must demonstrate that it had no duty to warn Haveg's employees based on undisputed facts. *Moore v. Sizemore,* Del.Supr., 405 A.2d 679, 680 (1979). If a non-moving party does not controvert a movant's affidavits or other record evidence with affidavits of his own, the movant's evidence will be considered uncontroverted, *Nix v. Sawyer,* Del.Super., 466 A.2d 407, 413 n. 8 (1983), and "uncontroverted evidence offered in support of the motion must be

accepted as true," *Oliver B. Cannon & Sons, Inc. v. Dorr–Oliver Inc.,* Del.Super., 312 A.2d 322, 325 (1973). The non-moving party cannot rest on mere allegations and denials once the movant has provided support for the motion. *Chrysler Corporation v. New Castle County,* Del.Super., 464 A.2d 75, 85 (1983).

The first question, then, is whether Herty, the supplier, knew or reasonably believed that Haveg, the purchaser/employer, was aware of the dangers of asbestos and asbestos fibers. It is undisputed that Haveg had made products containing asbestos for several years prior to its contact with Herty, and that a substantial percentage of the products were produced at Haveg's Marshallton plant. When Herty began to produce the asbestos paper for Haveg, Haveg supplied the raw asbestos. Later, at Haveg's request, Herty obtained the raw asbestos from the North American Asbestos Company and then Continental Products Corporation. Neither party disputes that the dangers of asbestos were known in the asbestos industry during the period of time in question. It would be reasonable to believe that Haveg, because of its heavy use of asbestos in its products, would be aware of what was generally known in the industry. Moreover, William L. Belvin, the Director of Herty, testified in his deposition that Leon deBrabander, Technical Manager of Haveg, informed him that Haveg was in complete compliance with OSHA regulations and was frequently subjected to on-site inspections to ensure that the employees were being adequately protected. DA–41.[7] The plaintiffs dispute this, claiming that deBrabander "never discussed safety with Herty." Plaintiffs' Brief at 18. The plaintiffs' own support for this proposition shows only that deBrabander did not recall discussing Haveg's safety measures with Belvin or Herty, and that he could not and did not deny that he may have done so. PA.–32.[8] Thus, plain-

---

7. "DA–" refers to the Defendant's Appendix. "PA–" refers to the Plaintiffs' Appendix.

8. Plaintiffs' support for the proposition that "Mr. deBrabander does not recall ever discuss-

ing Haveg's knowledge of OSHA or Haveg's safety procedures with Belvin or Herty", Plaintiffs' Brief at 4, consists of references to five pages of deBrabander's deposition. Four of these pages come from his deposition of Janu-

tiffs have not been able to produce evidence on the record before this Court refuting Herty's claim. Taking into account Haveg's involvement with asbestos, the knowledge of the asbestos industry at the time, and Belvin's unrefuted assertion that he was told that Haveg was following all OSHA regulations, this Court concludes as a matter of law that it was reasonable for Herty to believe that Haveg knew of the dangers of asbestos.

■ The second question to be asked, therefore, is whether Herty, the supplier, knew or had reason to suspect that the requisite warnings would fail to reach the employees. There is no evidence that any Herty representative was ever at the Haveg plant to witness Haveg's safety precautions. Also, as stated above, Herty, through Belvin, was under the impression that Haveg was following OSHA guidelines. At this point, the conclusion would be that Herty neither knew nor had reason to suspect that the employees were not receiving adequate warnings. The evidence indicates, however, that as of October 1978 Herty was provided by Haveg with warning labels to place on the asbestos paper. Whether these warning labels were adequate is for the jury to decide. If the jury finds them to be inadequate, they may also find that receipt of an inadequate label was sufficient to put Herty on notice that Haveg's safety measures were inadequate, since Haveg provided the inadequate label. If the jury finds that Herty was put on notice, then they may also find that Herty either negligently or willfully failed to warn Haveg's employees. For this reason, summary judgment will be denied as to this part of the complaint.

## II.

■ As to the conspiracy part of the complaint, Herty has introduced testimony from both Belvin, DA-41 to DA-43, and deBrabander, DA-250, that Herty and Haveg did not conspire to willfully injure the plaintiffs or knowingly suppress information about asbestos dangers from Haveg employees. The plaintiffs have not contradicted these statements with any evidence of their own. Uncontroverted evidence offered in support of a motion for summary judgment must be accepted as true. *Nix v. Sawyer*, Del.Super., 466 A.2d 407, 413 n. 8 (1983); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver Inc.*, Del.Super., 312 A.2d 322, 325 (1973). Therefore, summary judgment is granted on the conspiracy count.

## III.

It remains to consider the breach of warranty claims. The plaintiffs claim that 6 *Del.C.* § 2-318, which provides that an implied or express warranty extends past the immediate buyer of the goods to any natural person who may reasonably be expected to use the goods and is injured by the breach of warranty, creates strict liability in contract. The plaintiffs note that the section provides that "[a] seller may not exclude or limit the operation of this section." 6 *Del.C.* § 2-318. This section only operates, however, when an express or implied warranty has been made. If no such warranties were extended to the buyer, no subsequent user can claim their breach. The first question to be answered, therefore, is whether any warranties have been made.

■ The situation as to the express warranty is easily handled. Herty denies that any express warranty was made about the

ary 18, 1984. Page 10 of that deposition (PA-24) consists of deBrabander's testimony that he did not recall telling anyone at Herty that asbestos was safe and that he was not sure of whether Herty was aware of OSHA regulations regarding asbestos. This does not address the question of whether he discussed Haveg's safety measures with them. Page 12 of the deposition (PA-25) involves testimony as to whether labels were on the raw asbestos sent to Herty and whether there were any labels on the asbestos paper Herty sent to Haveg. Page 16 and 17

(PA-26 to 27) consists of deBrabander's opinion of whether Herty was able to produce asbestos paper to Haveg's requirements. Clearly none of these cites even remotely deal with the issue of what Herty was told about Haveg's safety measures. The only pertinent support is in their last reference to page 105 of deBrabander's February 20, 1984 deposition (PA-32) which as mentioned above, consists of deBrabander stating that he could not recall whether such a conversation occurred or not.

asbestos paper. The plaintiffs have not presented this Court with any evidence in the record before it as to the existence of such a warranty. Summary judgment is therefore granted.

 The crucial element as to an implied warranty of fitness for a particular purpose is that the buyer relies "on the seller's skill or judgment to select or furnish suitable goods." 6 *Del.C.* § 2–315. The undisputed evidence is clear that, at the very least, before Herty began producing asbestos paper for Haveg, Haveg supplied Herty with a sample of the asbestos paper it wished to have produced. Herty did a test run, after which Haveg tested the asbestos paper to make sure it would meet Haveg's specifications. In light of these facts, it cannot be said that Haveg was relying on Herty's skill or judgment as to the selection or furnishing of suitable goods. Herty was merely duplicating that which Haveg provided. No implied warranty of fitness for a particular purpose was given, therefore, and summary judgment is granted.

 Finally, there is the implied warranty of merchantability. When a purchaser knows of the dangers of a product, or where that danger is obvious, there is no duty to warn and no implied warranty of merchantability arises. *See Wilhelm v. Globe Solvent Co.,* 373 A.2d at 223, 3 R. Anderson, Uniform Commercial Code § 2–314:79 (1983); W. Kimble and R. Lesher, Products Liability § 196 (1979). The evidence is clear that Haveg management was well aware of asbestos dangers, as demonstrated by the existence of a booklet entitled "Caution: Asbestos Dust ... is hazardous to *your* health," at least by 1973. DA–324, DA–333. Supervisors and foremen were supposed to distribute these books to the employees. DA–197 to DA–199, DA–324, DA–334, DA–493 to DA–494. While the plaintiffs have introduced testimony that the employees never received this booklet or any other adequate warnings about asbestos dust, it is uncontroverted that management levels of Haveg were aware of the dangers. This being the case, I am satisfied that no implied warranty of merchantability arose when Herty sold asbestos paper to Haveg. Thus, summary judgment is granted on this portion of the complaint.

Summary judgment, therefore, is granted as to the warranty and conspiracy claims. While a "sophisticated purchaser" defense is available to the defendant, however, summary judgment cannot be granted on this basis because a jury may find that Herty knew or should have known that Haveg's employees were not receiving adequate warnings, the absence of which might cause their product to be defective.

IT IS SO ORDERED.