**IN THE SUPERIOR COURT**

**OF THE STATE OF DELAWARE**

KATHLEEN M. SZCZERBA, )
individually and as Executrix of the )
Estate of JOSEPH L. SZCZERBA, )
Deceased, )
  )
  )
Plaintiffs, )
v. ) C.A. No. N13C-09-080 WCC
  )
AMERICAN CIGARETTE )
OUTLET, INC., RAJ SINGH, LCM )
DISTRIBUTORS CO., INC., )
ADRENALIN RUSH, INC. d/b/a )
SMOKECLEAR, GIULIO BERTOLI )
and ANTHONY CAPACCIO, )
  )
Defendants. )

Submitted: December 2, 2015
Decided: April 1, 2016

**Defendant Adrenalin Rush, Inc.'s Motion to Dismiss–DENIED**

**MEMORANDUM OPINION**

Francis J. Murphy, Esquire, Kelley M. Huff, Esquire, Murphy & Landon, 1011 Centre Road, Suite 210, Wilmington, DE 19805.  Attorneys for Plaintiffs.

Michael F. Duggan, Esquire, Marc Sposato, Esquire, Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., 300 Delaware Avenue, Suite 900, Wilmington, DE 19801. Attorneys for Defendant Adrenalin Rush, Inc. d/b/a Smokeclear.

**CARPENTER, J.**

Before the Court is Defendant Adrenalin Rush, Inc.'s ("Adrenalin") Motion to Dismiss Plaintiffs' Amended Complaint. For the reasons that follow, Adrenalin's Motion will be DENIED.

## FACTS

The facts and circumstances underlying this litigation are tragic. New Castle County Police Officer Joseph L. Szczerba ("Officer Szczerba") responded to a 911 call on September 16, 2011.[1] Upon arriving at the scene, Officer Szczerba encountered David A. Salasky ("Mr. Salasky").[2] At that time, Mr. Salasky was experiencing "hallucinations, delusions, and paranoia" attributable to his ingestion of "bath salts"[3] he had purchased at American Cigarette Outlet in New Castle County on September 15, 2011.[4] Mr. Salasky soon turned violent, drew a knife on Officer Szczerba, and proceeded to stab him several times.[5] Officer Szczerba died soon after as a result of his injuries.[6] Mr. Salasky was later arrested and charged in

---

[1] Pls. Am. Compl. ¶¶ 2, 24.
[2] *Id*. ¶ 24.
[3] Preliminarily, the Court notes that "bath salts," which have since been banned in Delaware and across the nation, are a type of synthetic drug comprised of chemicals known to mimic the effects of substances including cocaine, LSD, and methamphetamine. *See* Del. Code Ann. tit. 16, § 4701 (West) (including "designer drugs" in definition of "controlled substances"); *Governor Signs into Law Ban on Dangerous "Bath Salts" Drugs*, http://news.delaware.gov/2012/01/25/governor-signs-into-law-ban-on-dangerous-bath-salts-drugs/ (last visited March 8, 2016); Jake Schaller, *Not for Bathing: Bath Salts and the New Menace of Synthetic Drugs*, 16 J. Health Care L. & Pol'y 245 (2013).
[4] Pls. Am. Compl. ¶¶ 22, 24.
[5] *Id*. ¶ 24.
[6] *Id*.

connection with Officer Szczerba's death.[7] He ultimately pled guilty but mentally ill to First Degree Murder, in addition to a number of other offenses.

On September 11, 2013, Kathleen M. Szczerba filed her initial Complaint, individually and as personal representative of her husband's estate ("Plaintiffs"), against American Cigarette Outlet, Inc. ("Cigarette Outlet") and Raj Singh ("Mr. Singh"), an employee of the corporation.[8] Plaintiffs then filed an Amended Complaint on March 27, 2015 naming as additional defendants: Adrenalin, Giulio Bertoli ("Mr. Bertoli"), Anthony Capaccio ("Mr. Capaccio"), LCM Distributing, LLC ("LCM"), and Southern Distributors Co., Inc. ("Southern"). Each Defendant is alleged to have played some role in the manufacture, distribution, or sale of the bath salts Mr. Salasky purchased at Cigarette Outlet. Specifically, Adrenalin, a New Jersey-based corporation operated by Mr. Bertoli and Mr. Capaccio (collectively, "Adrenalin Defendants"), manufactured and sold bath salts to LCM Distributing and/or Southern Distributors.[9] LCM and Southern then sold the bath salts they purchased from Adrenalin to the Cigarette Outlet.[10]

On September 14, 2015, Adrenalin moved to dismiss Plaintiffs' claims against it pursuant to Superior Court Civil Rule 12(b)(6). Counts XIII-XVII of the

---

[7] *See State v. Salasky*, 2013 WL 5487363, at *2 (Del. Super. Sept. 26, 2013).

[8] Mr. Singh's responsibilities included "the purchasing, ordering, inventory, and sale of products sold by Cigarette Outlet, including the products sold at the DuPont Highway store" and "the training, supervision, and oversight of the other employees of the Cigarette Outlet." Pls. Am. Compl. ¶¶ 15-16.

[9] *Id*. ¶ 13.

[10] *Id*.

3

Amended Complaint address the Adrenalin Defendants and allege negligence; gross negligence, recklessness, and willful and wanton conduct; breach of implied warranty; civil conspiracy; and loss of consortium.[11] Adrenalin's Motion requests that the Court dismiss these claims as barred by the statute of limitations.[12] It also contends dismissal of the conspiracy claim is warranted independently of the time-bar because Plaintiffs failed to allege Adrenalin acted unlawfully in furtherance of the conspiracy.[13] Finally, Adrenalin argues the breach of implied warranty claim must be dismissed because no warranty ever existed between the buyer and seller in this case.[14] The Court heard argument on December 2, 2015 and denied Adrenalin's Motion to Dismiss to the extent it relied on the statute of limitations.[15] This is the Court's decision with respect to the civil conspiracy and implied warranty claims.

## STANDARD OF REVIEW

Pursuant to Superior Court Civil Rule 12(b)(6), the Court will dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted."[16] Dismissal is warranted only when the Court can determine "with *reasonable*

---

[11] *Id*. ¶¶ 85-105. Count XVII for loss of consortium is asserted against all Defendants. *Id*. ¶¶ 104-105.

[12] Def. Mot. to Dismiss ¶ 4 (asserting the 2-year statute of limitations for survivorship and loss of consortium claims as barring all counts with the exception of that alleging breach of implied warranty).

[13] *Id*. ¶ 8.

[14] *Id*. ¶¶ 9-10.

[15] Judicial Action Form, D.I. 59.

[16] *See* Super. Ct. Civ. R. 12(b)(6).

*certainty* that, under any set of facts that could be proven to support the claims asserted, the plaintiff would not be entitled to relief."[17]   In deciding Adrenalin's Motion, the Court must assume as true the well-pleaded allegations of the Amended Complaint,[18] and afford Plaintiffs "the benefit of all reasonable inferences that can be drawn from [their] pleading."[19]

## DISCUSSION

### I.     Civil Conspiracy

Adrenalin asks the Court to dismiss Plaintiffs' civil conspiracy claim because the Amended Complaint does not plead that Adrenalin acted unlawfully in furtherance of the alleged conspiracy.[20]   To establish a claim for civil conspiracy, a Plaintiff must allege "(1) [a] confederation or combination of two or more persons; (2) [a]n unlawful act done in furtherance of the conspiracy; and (3) [a]ctual damage."[21]

---

[17] *See Furnari v. Wallpang, Inc.*, 2014 WL 1678419, at *3 (Del. Super. Apr. 16, 2014) (emphasis added) (citing *Clinton v. Enter. Rent–A–Car Co.,* 977 A.2d 892, 895 (Del. 2009)).
[18] *See Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38-39 (Del. 1996). *See also Precision Air v. Standard Chlorine of Del.*, 654 A.2d 403, 406 (Del. 1995) (providing that complaint is "well-plead" if it puts opposing party on notice of claim brought against it); *In re Benzene Litig.*, 2007 WL 625054, at *5 (Del. Super. Feb. 26, 2007) (discussing broad test for sufficiency of complaint).
[19] *See In re USACafes, L.P. Litig.*, 600 A.2d 43, 47 (Del. Ch. 1991) (providing also that the Court is not required to blindly accept all allegations or draw all inferences in the plaintiff's favor).
[20] Def. Mot. to Dismiss ¶ 8.
[21] *See Johnson v. Preferred Prof'l Ins. Co.*, 91 A.3d 994, 1014 (Del. Super. 2014) (quoting *Nicolet, Inc. v. Nutt,* 525 A.2d 146, 149-50 (Del. 1987), *appeal refused sub nom*, *Turner v. Johnson*, 89 A.3d 478 (Del. 2014)).

5

Importantly, civil conspiracy is not an independent cause of action under Delaware law.[22] Thus, Adrenalin is correct that Plaintiffs are required to premise their claim on some underlying wrong such as a tort or other statutory violation.[23] That said, Delaware courts "have recognized that the nature of conspiracies often makes it impossible to provide details at the pleading stage and that the pleader should be allowed to resort to the discovery process and not be subjected to a dismissal…."[24] Nevertheless, the Amended Complaint must, at a minimum, sufficiently allow the Court "to determine whether or not a valid claim for relief has been stated and to enable the opposing side to prepare an adequate responsive pleading."[25]

As is often the case in pleadings premised on products liability, the Amended Complaint here is "structured cumulatively," so that all allegations in preceding counts are incorporated therein.[26] Counts XIII through XV assert

---

[22] *See, e.g.*, *Ramunno v. Cawley*, 705 A.2d 1029, 1039 (Del. 1998) (citing *Connolly v. Labowitz*, 519 A.2d 138, 143 (Del. Super. 1986)).

[23] *See NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009) ("Although the elements of a claim for civil conspiracy are flexible, it is essential that there be an underlying wrongful act, such as a tort or a statutory violation." (citing *Empire Fin. Servs. v. Bank of New York,* 900 A.2d 92, 97 (Del. 2006))). *See also Anderson v. Airco, Inc.*, 2004 WL 2827887, at *3 (Del. Super. Nov. 30, 2004) ("An actionable tort must accompany any conspiracy in order for there to be a recovery.").

[24] *See Bell v. Celotex Corp.*, 1988 WL 7623, at *4 (Del. Super. Jan. 19, 1988) (quoting 5 Wright & Miller, *Federal Practice and Procedure:* Civil § 1233 at 181 (applying federal rule identical to Delaware Superior Court Civil Rule 8(a) to conspiracy claim)).

[25] *See id. See also Strong v. Wells Fargo Bank*, 2012 WL 3549730, at *3 (Del. Super. July 20, 2012) ("[W]hen a claim is so vague as to deprive an adverse party from a clear indication of the nature of the pleader's claim, the Court will not engage in a guessing game to supply that claim on Plaintiffs' behalf.").

[26] *See Bell*, 1988 WL 7623, at *1 (discussing recurring structure of complaints in asbestos litigation); *In re Benzene Litig.*, 2007 WL 625054, at *5 ("The Court must view the complaint as

negligence; gross negligence, recklessness, and willful and wanton conduct; and breach of implied warranty claims against the Adrenalin Defendants. The allegations with respect to these claims are thus incorporated and re-alleged in Count XVI, which sets forth Plaintiffs' civil conspiracy claim.

Ultimately, Plaintiffs allege the Adrenalin Defendants conspired among themselves and with Cigarette Outlet, Mr. Singh, LCM, and Southern "to suppress and misrepresent information about the dangers posed by bath salts to the public and to individuals like …Officer Szczerba" when it knew or should have known their conduct created a risk of "serious personal injury and death from persons like Salasky who used bath salts."[27] Plaintiffs further allege the Adrenalin Defendants "aided and abetted the manufacturer(s), distributors, sellers, and supplier(s) of bath salts" in concealing the product's "true dangers" by selling their bath salts to the public without proper warnings, instructions, or labeling.[28] According to Plaintiffs, the Adrenalin Defendants' acts and omissions in furtherance of this conspiracy

---

an integrated document-all of the allegations must be considered when determining whether the complaint provides fair notice of the claims.").

[27] Pls. Am. Compl. ¶¶ 99-100.

[28] *Id*. ¶ 101. The premise of Plaintiffs' negligence claim against the Adrenalin Defendants specifically is that they knew or should have known that: (1) "bath salts were a dangerous and defective product and could not be sold safely to the public;" (2) "customers like Salasky would use the bath salts in a manner that would cause …psychotic reactions and … violent [behavior]," thus presenting "risk of serious bodily injury and death to other persons;" (3) the bath salts "lacked adequate warnings and instructions about their use and their effects…and failed to warn customers of the dangers of the use of the products;" (4) "the bath salt products did not fully disclose their ingredients;" and (5) "the bath salts sold to Salasky were inherently dangerous,…Salasky would use the bath salts, and…the bath salts would make him a danger to the public, including persons like Police Officer Szczerba." *See id.* ¶ 86.

were knowing, malicious, willful, and wanton so as to warrant punitive damages.[29] Plaintiffs contend this characterization of the Adrenalin Defendants' conduct is appropriate because they acted out of "sheer greed" and a desire to maximize Adrenalin's profits despite the "known substantial risks" their product posed to the public.[30]

At the outset, the Court notes that although the Plaintiffs have incorporated the paragraphs of the Amended Complaint asserting negligence, such allegations cannot provide the requisite foundation for civil conspiracy.[31] "There is no such thing as a conspiracy to commit negligence or, more precisely, to fail to exercise due care."[32] Plaintiffs, however, argue that they have adequately alleged in this

---

[29] *Id.* ¶ 102.
[30] *Id.* ¶ 92.
[31] *See Anderson*, 2004 WL 2827887, at *3-4 ("Delaware courts have addressed civil conspiracy in a variety of contexts but no authority exists to support a civil conspiracy claim proceeding on the shoulders of a negligence claim."). It would seem the instant civil conspiracy claim also encompasses allegations which appear to be more along the lines of aiding and abetting. Indeed, Plaintiffs contend the Adrenalin Defendants "aided and abetted the manufacturer(s), distributors, sellers, and supplier(s) of bath salts" in concealing the product's dangerous effects by selling their bath salts to the public without proper warnings, instructions, or labeling. Pls. Am. Compl. ¶ 86. Importantly, "[u]nlike civil conspiracy's emphasis on explicit agreement to commit a wrong," aiding-abetting liability may expand the scope of the Plaintiffs' claim. *See Anderson*, 2004 WL 2827887, at *4-5 (dismissing conspiracy claim where underlying wrong sounded in negligence but allowing aiding and abetting claim to survive). However, since it has not been specifically asserted by Plaintiffs or argued by either party in this Motion, the Court will not address the issue beyond the comments above.
[32] *See Anderson*, 2004 WL 2827887, at *4.

count the underlying wrong of intentional misrepresentation.[33]  In *Nicolet, Inc. v. Nutt*, the Delaware Supreme Court found allegations of intentional misrepresentation or fraudulent concealment sufficient to support the plaintiffs' claim that a manufacturer participated in an industry-wide conspiracy to conceal the health hazards of asbestos.[34]  A prima facie case of fraudulent concealment requires a showing of: (1) deliberate concealment of a material fact or silence in the face of a duty to speak; (2) scienter; (3) intent to induce reliance upon the concealment; (4) causation; and (5) resulting damage.[35]  The Court found these elements present in *Nicolet*, reasoning:

> [P]laintiffs claim … the conspiracy, which allegedly included [defendant], caused "to be positively asserted to plaintiffs in a manner not warranted by the information possessed by said defendants,... that it was safe…to work in close proximity to [the] [asbestos] materials" and … suppressed "medical and scientific data and other knowledge, causing plaintiffs to be and remain ignorant thereof." The complaint clearly alleges scienter in that the participants "knowingly and willfully conspired" in the scheme…[and] alleges an intent… to induce…reliance on false or incomplete material facts. In our opinion these allegations are sufficient to state a tort claim based on a theory of fraudulent concealment.[36]

The Court sees no reason why the Supreme Court's rationale in *Nicolet* would be inapplicable here.[37]  While the Amended Complaint does not expressly

---

[33] Pls. Br. in Opp'n to Def. Mot. to Dismiss, at 7.

[34] *See Nicolet*, 525 A.2d at 149-50.  *See also Duffield Assocs., Inc. v. Meridian Architects & Eng'rs, LLC*, 2010 WL 2802409, at *5 (Del. Super. July 12, 2010); *Bell*, 1988 WL 7623, at *4-5.

[35] *See Nicolet*, 525 A.2d at 149-50.

[36] *Id.* at 149.

[37] *See Zerby v. Allied Signal Inc.*, 2001 WL 112052, at *7-8 (Del. Super. Feb. 2, 2001) ("Although it was an asbestos case, *Nicolet's* holding applies here.").

include a separate count bearing the label "intentional misrepresentation" or "fraudulent concealment," it contains allegations mirroring those in *Nicolet*.[38] Plaintiffs allege Adrenalin breached its duty to warn consumers about the dangers associated with its product, knowingly and willfully conspired with other Defendants to conceal the harmful effects of bath salts from the public, and acted to suppress and misrepresent information about the risks associated with their product in furtherance of the conspiracy.[39] Plaintiffs additionally maintain they "may be able to adduce further evidence of fraud in discovery."[40] Thus, at this early stage in the litigation, the Court finds the Amended Complaint sufficiently alleges a basis for civil conspiracy.

## II. Breach of Implied Warranties

Adrenalin also asks the Court to dismiss Plaintiffs' breach of implied warranty claim for failure to allege any warranty ever existed with respect to the bath salts.[41]

---

[38] *See* Del. Super. Ct. Civ. R. 8(f) ("All pleadings shall be so construed as to do substantial justice."). Rule 8 does not " require the pleader to, narrate facts sufficient to constitute a cause of action, nor is he [or she] required to spell out the definite verbiage of the wrongs complained of if the missing elements, or element, follow, or may reasonably be inferred from the facts that are alleged." *See Zerby*, 2001 WL 112052, at \*9 (quoting *Costello v. Cording*, 91 A.2d 182, 184 (Del. Super. 1952)).

[39] *See Bell*, 1998 WL 7623, at \*5 (citing *Nicolet*, 525 A.2d at 150). *See also White v. APP Pharm., LLC*, 2011 WL 2176151 (Del. Super. Apr. 7, 2011) (finding patient pled fraud claim against pharmaceutical manufacturers with sufficient particularity to defeat motion to dismiss with "knew or should have known" scienter and emphasizing that patient was not alleging false representations but rather a failure to disclose dangerous side effect of heparin).

[40] Pls. Br. in Opp'n to Def. Mot. to Dismiss, at 7.

[41] Def. Mot. to Dismiss ¶¶ 9-10.

Plaintiffs' claim that Adrenalin's sale of bath salts was subject to the implied warranties of merchantability and fitness for a particular purpose is governed under Article 2 of Delaware's Uniform Commercial Code ("UCC") addressing transactions in goods.[42]   Under 6 *Del. C.* § 2-314, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." [43]  "Merchantable" requires at a minimum that the goods:

> (a) pass without objection in the trade under the contract description; and
> (b) in the case of fungible goods, are of fair average quality within the description; and
> (c) are fit for the ordinary purposes for which such goods are used; and
> (d) run… of even kind, quality and quantity …; and
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
> (f) conform to the promises or affirmations of fact made on the container or label if any.[44]

Moreover, pursuant to 6 *Del. C.* § 2-315, "[w]here the seller … has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is …an implied warranty that the goods shall be fit for such purpose."[45]  Both implied

---

[42] 6 *Del. C.* §§ 2-102, 2-105.

[43] 6 *Del. C.* § 2-314(1).

[44] *See id.* § 2-314(2)(a)-(f).  "Unless excluded or modified (Section 2-316) other implied warranties may arise from course of dealing or usage of trade."  *Id.* § 2-314(3).

[45] *See id.* § 2-315.  *See also Barba v. Carlson*, 2014 WL 1678246, at *5 (Del. Super. Apr. 8, 2014) ("The consumer does not need to provide the seller with actual knowledge of the particular purpose for which the product is intended, if the seller has reason to perceive the purpose intended or that reliance exists. It is not necessary that the plaintiff claim that there was

warranties may be disclaimed if done so conspicuously and in accordance with the means set forth in the Code.[46]

Importantly, a seller's warranty to an original purchaser "extends to any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty."[47] In the same vein, "[a] secondary purchaser who claims the protection of a warranty is subject to the same disclaimers, modifications or remedy limitation clauses that were the basis of the underlying sales agreement between the original purchaser and seller."[48]  In other

some unusual use for the product. The crucial element is that the buyer relies on the seller's superior knowledge and expertise in selecting suitable goods.").

[46] *See Barba*, 2014 WL 1678246, at *3-4 (citing 6 *Del. C.* § 2-316(2)). "[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." § 2-316(2). For example, "[l]anguage to exclude all implied warranties of fitness is sufficient if it states…that '[t]here are no warranties which extend beyond the description on the face hereof.'" *Id*.  The Code further provides, notwithstanding § 2-316(2):

> (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and
> (b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he or she desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him or her; and
> (c) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

*Id*. § 2-316(3)(a)-(c).

[47] 6 *Del. C.* § 2-318. *See also S&R Assocs., L.P. v. Shell Oil Co.*, 725 A.2d 431, 437 (Del. Super. 1998) ("To counter the harsh result of [the privity] rule, the legislature enacted Section 2-318, abolishing the privity requirement and granting standing to those likely to be injured by defective products."). Notably, "[t]his section only operates, however, when an express or implied warranty has been made…. The first question to be answered, therefore, is whether any warranties have been made." *See In re Asbestos Litig. (Mergenthaler)*, 542 A.2d 1205, 1213 (Del. Super. 1986).

[48] *Lecates v. Hertrich Pontiac Buick Co.*, 515 A.2d 163, 166 (Del. Super. 1986).

words, "if no such warranties were extended to the buyer, no subsequent user can claim their breach. The first question to be answered, therefore, is whether any warranties ha[d] been made."[49]

Here, the Amended Complaint alleges the implied warranties applied to the sale of bath salts to Salasky. Plaintiffs claim Adrenalin "reasonably suspected Salasky and individuals like him would use the bath salts," and that members of the public, like Officer Szczerba, "would be affected … and injured by the breach of the warranties."[50] However, as the Plaintiffs also acknowledge, the original purchase of Adrenalin's bath salts was made by Defendant *distributors*, LCM and Southern, not Salasky. Thus, the question of whether the protection of the implied warranties extends to Plaintiffs necessarily depends on whether the warranties attached in the initial transaction between Adrenalin and LCM and/or Southern.[51]

Adrenalin does not contend that it validly disclaimed or limited the warranties with respect to its sale of the bath salts. Rather, its sole contention is that Plaintiffs failed to plead that any warranty ever existed, so there can logically be no breach.[52] While perhaps true, at this stage of the litigation and in consideration of Delaware's liberal pleading rules, such lack of specificity is not fatal to Plaintiffs' warranty claims at this time. Adrenalin, as an alleged

---

[49] *In re Asbestos Litig. (Mergenthaler)*, 542 A.2d 1205, 1213 (Del. Super. 1986).
[50] Pls. Am. Compl. ¶ 95.
[51] *See In re Asbestos Litig.*, 542 A.2d at 1213.
[52] Def. Mot. to Dismiss ¶ 9.

manufacturer of bath salts, qualifies as a merchant for purposes of the UCC[53] and generally there is a reasonable inference of merchantability and fitness attached to the sale of its product. Whether this claim will survive summary judgment is unclear, but the Court will not dismiss it at this stage and will allow discovery to determine its viability.

That said, the Court would suggest that counsel for the Plaintiffs carefully consider the merits of bringing a UCC claim before a jury and the complexity it would add to the litigation. Explaining a concept even lawyers struggle to understand to twelve lay people would be challenging at best and would perhaps suggest an unwise litigation strategy. But it is ultimately for counsel to decide whether the Court's concern warrants a different course of action.

Finally, having had an opportunity to consider the parties' briefing and hear argument on multiple occasions in this litigation, the Court asks that counsel litigate this matter in a purely legal and professional manner. Everyone appreciates that Officer Szczerba was an outstanding individual and a very good police officer. There is no dispute his death was a tragedy for his family and the community. But the emotion surrounding such an event should not be used to give support to a legally insufficient claim or to suggest that the Court should accept an argument

---

[53] 6 *Del. C.* § 2-314(1).

simply because of the consequences that flowed from his death. Such conduct would not honor the sacrifices of this officer or the oath he swore to uphold.

## CONCLUSION

As a result of the above, Defendant Adrenalin's Motion to Dismiss is hereby DENIED.

**IT IS SO ORDERED.**

 /s/ William C. Carpenter, Jr.
Judge William C. Carpenter, Jr.