Josephine E. THOMAS, Appellant,

v.

ST. JOSEPH HOSPITAL et al., Appellees.

No. 17891.

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 30, 1981.

Rehearing Denied June 4, 1981.

John Milutin, K. Michael Mayes, Harvill & Hardy, Houston, for appellant.

Roger A. Rider, Richard Sheehy, Butler, Binion, Rice, Cook & Knapp, Tom Lorance, Wilton Chalker, Lorance, Thompson & Wittig, Houston, for appellees.

Before COLEMAN, C. J., and PEDEN and SMITH, JJ.

PEDEN, Justice.

Josephine E. Thomas appeals from a take-nothing judgment rendered in a wrongful death and survivor's suit brought in strict tort liability, negligence, and breach of warranty against St. Joseph Hospital and Whitehouse Company. Mrs. Thomas's husband, Burrell Thomas, died in St. Joseph Hospital after suffering burns over a substantial portion of his body when he dropped a lighted match and ignited his hospital gown. The trial judge directed a verdict in favor of Whitehouse, a supplier of hospital gowns, and third-party defendants M. Lowenstein and Will Ross, Inc. The jury failed to find that St. Joseph had been negligent in caring for Mr. Thomas but found damages of $46,500. The appellant's position is that the trial court erred 1) in granting a directed verdict in favor of defendant Whitehouse, since there was evidence that Whitehouse had manufactured the hospital gown, 2) in excluding certain portions of the testimony of plaintiff's expert witness, Dr. Douglas Muster, 3) in refusing to submit to the jury nine special issues based on a strict liability theory, 4) in refusing to instruct the jury that destruction of relevant evidence raises a presumption that such evidence would have been unfavorable to the party destroying it, and 5) in overruling the plaintiff's motion for mistrial, based on the treating physician's statements that the deceased assumed his own risk by smoking in his room. We reverse the trial court's judgment in part and remand it to the trial court for a new trial on the strict liability question; in all other respects, we affirm.

Mrs. Thomas first complains that the trial court erred in granting a directed verdict for the Whitehouse Company because there was more than a scintilla of evidence that it manufactured the gown in question. We overrule these points. The plaintiff had the burden of establishing who made the gown in question under the theories of strict liability, breach of warranty, or negligence. It is clear that the gown was furnished to Mr. Thomas by the hospital and that a charge for it was passed on to him as part of the overhead expense. The only evidence admitted to show who made it was 1) the response filed by Whitehouse to a special appearance filed by a third party defendant, its supplier of cloth, M. Lowenstein, 2) St. Joseph Hospital's answers to interrogatories, including the statement that St. Joseph Hospital distributed its gowns *randomly*, and 3) Defendant's Exhibits 1–4 which indicated that the other third

party defendant, Will Ross, Inc., manufactured 85% of the hospital gowns used by St. Joseph Hospital in the relevant time period. Defendant's Exhibits 1–4 show that Will Ross supplied St. Joseph with 1432 dozen hospital gowns as opposed to 65 dozen supplied by Whitehouse Company. Neither of the nurses who testified nor the treating physician was able to identify the manufacturer of the gown, so unless the response filed by Whitehouse was a judicial admission, the jury would have had to base its choice of which of the two possible companies manufactured the gown on mere speculation and conjecture.

> When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is, in legal effect, no evidence, and will not support a verdict or judgment.

Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 362–63 (1960). *See Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854 (Tex.1968); *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059 (1898); *Sharp v. Chrysler Corp.*, 432 S.W.2d 131 (Tex.Civ. App.1968, writ ref'd n.r.e.).

■ A judicial admission is a deliberate, clear, and unequivocal formal act made by a party, which if true and not modified or explained by him, would defeat his right of recovery or defense; the principle should be applied with caution. *Esteve Cotton Co. v. Hancock*, 539 S.W.2d 145, 157 (Tex.Civ. App.1976, writ ref'd n.r.e.); *see also Griffin v. Superior Insurance Co.*, 161 Tex. 195, 338 S.W.2d 415, 418–19 (1960). Statements made by a party or his attorney in the course of judicial proceedings which are not based on personal knowledge or are made by mistake or based upon a mistaken belief of the facts are not considered judicial admissions. *Gevinson v. Manhattan Construction Co. of Oklahoma*, 449 S.W.2d 458, 460 (Tex.1969).

■ In our case, Mrs. Thomas added Whitehouse Company as a defendant in 1975. St. Joseph Hospital stated in an answer to interrogatories that only Whitehouse Company had supplied gowns to the hospital during the relevant time period. This information was peculiarly within the knowledge of St. Joseph Hospital to the exclusion of Whitehouse. In January of 1977, Whitehouse filed a third-party action against Lowenstein, its supplier, and when the supplier filed a special appearance and answer, Whitehouse responded, stating that it had manufactured the gown. This statement is what the appellant claims is a judicial admission. St. Joseph amended its interrogatory answers soon after that to state that Will Ross, Inc., also had supplied gowns to it during the relevant period; Whitehouse then filed a supplementary third-party action against Will Ross, Inc., in September of 1977, in which it specifically abandoned its earlier admission.

The initial response by Whitehouse was based upon erroneous information furnished by St. Joseph; it was amended and modified to reflect the correct facts. It did not constitute a judicial admission.

In points of error 2–27 the appellant contends that the trial court erred in excluding an exhibit and certain portions of the testimony of Douglas Muster, Ph.D., plaintiff's expert witness. The basis for the objections leveled at his testimony generally was that Muster was not qualified to render opinions regarding the effects of various flame retardants, the relationship between hospital environments and the effects of flammability, and the safe design of hospital garments.

■ The trial judge has wide discretion in determining who is qualified as an expert in a particular area, and his determination will be overturned only on a clear showing of abuse, *Rhinetubes, Inc. v. Norddeutscher Lloyd*, 335 S.W.2d 269 (Tex.Civ.App.1960, writ ref'd n.r.e.); 2 Ray, *Texas Practice, Law of Evidence* § 1401 (1980); that same discretion applies to the trial court's rulings on the propriety of hypothetical questions, *Foreman v. Texas Employers' Insurance Association*, 150 Tex. 468, 241 S.W.2d 977 (1951); *Highway Insurance Underwriters v. Matthews*, 246 S.W.2d 214 (Tex.Civ.App. 1952, writ ref'd n.r.e.). To be entitled to

reversal, the plaintiff must show that the hypothetical questions were proper and that Dr. Muster was so qualified in the areas of excluded testimony that it was an abuse of discretion for the trial court to exclude them; in addition Mrs. Thomas must show that the error, if any, was harmful.

■ Dr. Muster is a professor of mechanical engineering at the University of Houston; he was department chairman for ten years and currently has the Brown & Root chair. He has not had any college courses in fire protection. Mechanical engineering includes subjects involving thermal reaction combustion processes and thermodynamics. Five or six years ago he was the professor responsible for a 20-student college competition project related to fire prevention; in the course of this project he visited a large insurance company exhibition concerning fire prevention and flame retardation in textiles, wood, and plastics. He has received information from the National Fire Protection Association and has read a book about the Beverly Hills Supper Club fire in Kentucky. He knows that the National Fire Protection Association Handbook is available to anyone in the country.

Dr. Muster is consulted by oil firms around the world, but he did not show that any of that consulting involved fire protection or related fields. He is aware of a certification program concerning fire protection and safety, but it is clear that he is not certified nor does he know what qualifications are required for certification. When asked to define and discuss the term flammability, he read from Random House and Webster's Dictionaries the definitions contained therein and contrasted them with the National Fire Protection Handbook. He has demonstrated no expertise in the medical field or in the field of hospital safety.

Although we would have been inclined to allow Dr. Muster to testify more fully than the trial judge did, we cannot say he abused his discretion in this regard.

A reading of Dr. Muster's entire testimony reveals that the excluded portion is often repetitious and cumulative; he was allowed to testify about flammability, flame retardants, the burning of materials, the effect of a flame retardant on safety, and the fact that it was more desirable for a gown to be flame retardant than not. He also was allowed to testify:

> The gown being flammable the way it was and the requirement that the cotton, of itself, only requires seventeen per cent oxygen in the air to support combustion, there is no question in my mind that the gown, as the nurse saw it, described as being a rather large flame like it was doused in gasoline, etc., that this could well be within the range of what you would expect in the situation involved here; that the flammability had contributed materially to the accident, being as severe as it was, the degree at which it occurred.

Most of the objections to Dr. Muster's testimony that were sustained went to the form of the question or the responsiveness of the answer; the plaintiff's counsel did not always respond by rephrasing or taking a different approach. We hold that the error, if any, in excluding the testimony and the exhibit, was harmless.

The plaintiff contends that the evidence was legally and factually sufficient to support the submission of the strict products liability issues that were refused by the trial judge and that the trial court's refusal amounted to reversible error under the circumstances.

It is the hospital's position that it is not liable under the doctrine of strict products liability because the hospital is engaged in providing health care, not in selling hospital gowns. The hospital also denies that the gown was defective or unreasonably dangerous. It does not suggest that the proffered issues were improperly drawn.

■ A trial court may not refuse to submit a special issue merely because the evidence is factually insufficient to support an affirmative finding thereto. *See Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Mutual Life Insurance Co. of New York v. Steele*, 570 S.W.2d 213, 217 (Tex.Civ.App.1978, writ ref'd n.r.e.). Unless St. Joseph Hospital, as a provider of services, is outside the pur-

view of the strict liability doctrine or unless there was no evidence of probative force to support submission of the strict liability issues, the jury should have been given an opportunity to pass on them; failure to do so in a proper case is reversible error since strict liability issues are distinct from the negligence questions which were submitted.

Can a hospital be liable under the strict liability provisions of Section 402A of the *Restatement (Second) of Torts*? We have found no Texas case squarely in point.

In our case the hospital furnished the gown to Mr. Thomas, and the cost of the gowns is considered in determining the overhead which must be recouped; some overhead costs are reflected in the room bill, but the director of materials management didn't know which overhead was in the room rate. The concept of strict liability generally does not apply to defective services, as opposed to defective products, see, e. g., *Langford v. Kraft*, 551 S.W.2d 392, 396 (Tex.Civ.App.1977), aff'd, 565 S.W.2d 223 (Tex.); but the sales/service hybrid situation is less clear. In *Moody v. City of Galveston*, 524 S.W.2d 583 (Tex.Civ.App.1975, writ ref'd n.r.e.), we considered whether a city could be considered a seller within the meaning of 402A when it sold and delivered water which was mixed with flammable gas, and the city was held strictly liable.

Lessors or bailors of unreasonably dangerous products have been held liable in wrongful death actions on the theory that, while they are not sellers of the product, they introduce it into the stream of commerce. See *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1975); *Freitas v. Twin Cities Fisherman's Cooperative Association*, 452 S.W.2d 931 (Tex.Civ.App.1970, writ ref'd n.r.e.).

The appellee relies on a line of cases in this jurisdiction and others in which courts have declined to impose strict liability for injuries caused by defective products that were intimately and inseparably connected with the professional services rendered. See, e. g., *Vergott v. Deseret Pharmaceuticals Co.*, 463 F.2d 12 (5th Cir. 1972) (hospital not strictly liable when defective needle broke in patient's arm); *La Rossa v. Scientific Design Co.*, 402 F.2d 937 (3rd Cir. 1968) (engineer who defectively designed an industrial plant not strictly liable); *Silverhart v. Mount Zion Hospital*, 98 Cal.Rptr. 187, 20 Cal.App.3d 1022 (1971) (hospital not strictly liable when defective surgical needle broke and lodged in patient's body); *Barbee v. Rogers*, 425 S.W.2d 342 (Tex.1968) (eye doctor not strictly liable for defective fitting of contact lens); *Shivers v. Good Shepherd Hospital, Inc.*, 427 S.W.2d 104 (Tex.Civ.App. 1968, writ ref'd n.r.e.) (hospital protected by charitable immunity from strict liability for administering a contaminated drug). The rationale supporting these holdings is that a hospital is not ordinarily engaged in the business of selling the products or equipment used in the course of its primary function of providing medical services. *Silverhart v. Mount Zion Hospital, supra*, 98 Cal.Rptr. at 190–91. Strict liability has not been found where there was no complaint that the product, per se, was defective, apart from the professional services connected with its use, see, e. g., *Barbee v. Rogers, supra*; *La Rossa v. Scientific Design Co., supra*, or, as in the other cases cited above, when the professional services could not have been rendered without using the product.

The appellant argues that our case is distinguishable because she specifically complains of a defective gown, not professional services, and because the supplying of the gown is not necessarily involved in or related to the professional services rendered by the hospital. She points out that no public policy supports extension of immunity to a hospital that supplies a defective product not integrally related to the professional services it renders. It is true that the essence of the relationship between a physician and his patient relates to the professional services and skill he offers and the patient purchases. See, e. g., *Magrine v. Krasnica*, 94 N.J.Super. 223, 227 A.2d 539, 543, aff'd, 100 N.J.Super. 223, 241 A.2d 637 and 53 N.J. 259, 250 A.2d 129 (1969). Where, as here, a hospital apparently supplies a product unrelated to the essential professional relationship, we hold

that it cannot be said that as a matter of law the hospital did not introduce the harmful product into the stream of commerce. *See generally Rourke v. Garza*, 530 S.W.2d 794 (Tex.1975); *Hovenden v. Tenbush*, 529 S.W.2d 302 (Tex.Civ.App.1975, no writ); *Hebert v. Loveless*, 474 S.W.2d 732 (Tex. Civ.App.1971, writ ref'd n.r.e.); *McLain v. Hodge*, 474 S.W.2d 772 (Tex.Civ.App.1971, writ ref'd n.r.e.). A product must be released in some manner to the consuming public before it is introduced into the stream of commerce; this is accomplished when a manufacturer, supplier, or retailer engages in a bailment as part of a transaction essentially commercial in character and where the bailment for mutual benefit accompanies a sale of goods or services. *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 376–77 (Tex.1978).

In *Providence Hospital v. Truly*, 611 S.W.2d 127 (Tex.Civ.App.1980, no writ to date), a hospital was found liable for breach of warranty under the Texas Deceptive Trade Practices Act, Tex.Bus. & Comm. Code § 17.41, *et seq.*, when it administered a contaminated drug to a patient during eye surgery. Similarly, the Fifth Circuit has found liability for breach of warranty where the defendant provided the services of a professional nutritionist and also sold a defective ration supplement. *Texsun Feed Yards, Inc. v. Ralston Purina Co.*, 447 F.2d 660, 667–68 (5th Cir. 1971). In *Texsun* the court did not apply strict tort liability because there was no proof that the food supplement was unreasonably dangerous.

■ If there was any evidence from which the jury reasonably could have concluded that the hospital gown in the case at bar was unreasonably dangerous, the court erred in failing to submit the requested strict liability issues. *See Ethicon, Inc. v. Parten*, 520 S.W.2d 527, 531 (Tex.Civ.App. 1975, no writ). A product can be defective in manufacturing, *Id.; Coca Cola Bottling Co. of Houston v. Hobart*, 423 S.W.2d 118 (Tex.Civ.App.1967, writ ref'd n.r.e.), design, *Gonzales v. Caterpillar Tractor Co.*, 571

S.W.2d 867 (Tex.1978), or marketing, i. e., failure to warn, *Helicoid Gage Division of American Chain & Cable Co. v. Howell*, 511 S.W.2d 573 (Tex.Civ.App.1974, writ ref'd n.r.e.). The plaintiff had the burden of offering some evidence that the product was defective in one or more of these three ways, that the defect rendered it unreasonably dangerous,[1] and that the defective condition was a producing cause of the injuries, *Technical Chemical Co. v. Jacobs*, 480 S.W.2d 602 (Tex.1972); *C.A. Hoover & Son v. O. M. Franklin Serum Co.*, 444 S.W.2d 596 (Tex.1969).

■ Plaintiff's decedent suffered second and third degree burns over a substantial portion of his body. After the fire on December 18, 1973, Mr. Thomas's condition quickly deteriorated, and he died on January 2, 1974. According to his treating physician, Dr. O. C. Hunter, the burns were a contributing factor to Mr. Thomas's death. Following a discussion of the meaning of flammability, Dr. Muster testified that the gown worn by the decedent was definitely flammable, and Christopher Carney, executive vice president of St. Joseph, testified through interrogatories that the gown was apparently flammable.

We review additional testimony of Dr. Muster. In 1973 technology was available to make hospital gowns flame-retardant. The gown was composed of 50% cotton, and cotton has almost no flame-retardant characteristics. If a lighted match had been dropped on a flame-retardant gown, it would at most sear or discolor as opposed to bursting into flames, becoming ablaze, or burning as if it had gasoline on it. He was unaware of any cost prohibitions against manufacturing flame-retardant hospital gowns, and he said that such materials are commonly found and are reasonably inexpensive. Flame retardancy has a material and significant effect on safety, and the safety factors to be considered in the manufacture of clothing include the type of fab-

---

1. Comment i to § 402A of the Restatement (Second) of Torts defines an unreasonably dangerous product as one which is dangerous to an extent beyond that which would be contemplat- ed by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics.

ric, its characteristics, the use to which it would be put, and the environment in which it would be used. The fact that an adult's capabilities of caring for himself are impaired is a definite safety factor in determining the type garment that should be provided to him. Finally, Dr. Muster testified that a flame-retardant gown would not be classified as a flammable gown and would be safer than a gown that is not flame retardant.

Dr. Hunter testified that Mr. Thomas was instructed not to smoke because of his own general health and because he shared a room with three other patients on oxygen therapy. There were "no smoking" signs on the breathing machine, and the nurses were instructed to remove cigarettes from the patients and secure them at the call desk on the floor. Nurse Lester testified, however, that it is neither prohibited nor unusual for a patient to smoke in a hospital room and that the hospital even provides ashtrays for that purpose.

The foregoing is some evidence that the gown was defective and unreasonably dangerous, either because of design or failure to warn, and that the defect was a producing cause of injury to the plaintiff's decedent. We hold that the trial court should have submitted the strict liability issues to the jury, and we sustain points of error 32–40.

■ In point of error 41 Mrs. Thomas argues that it was reversible error to fail to submit the following:

> You are instructed that destruction of evidence relevant to a lawsuit raises a presumption that that evidence would have been unfavorable to the cause of the party disposing of said evidence.

The availability of the gown was relevant to the strict liability issues, which we hold should have been submitted to the jury. The trial court had considerable discretion in deciding what instructions are necessary and proper in submitting issues to the jury. Rule 277, Tex.R.Civ.P.; *Thomas v. Oil & Gas Building, Inc.*, 582 S.W.2d 873 (Tex.Civ. App.1979, writ ref'd n.r.e.); *Union Oil Company of California v. Richard*, 536 S.W.2d 955 (Tex.Civ.App.1975, writ ref'd n.r.e.).

We conclude that the trial court did not abuse its discretion, that the instruction was not necessary in order for the jury to be able to render a proper verdict, and that its omission was not reversible error. *See generally* G. Hodges, *Special Issue Submission in Texas* § 8 (1959); 3 R. McDonald, *Texas Civil Practice*, §§ 12.14.1–12.14.3, 12.-31–12.33.2 (1970 & 1980 supp.).

■ Finally, the appellant urges that it was error to overrule her motion for mistrial based on the treating physician's remarks that Burrell Thomas "assumed his own risk" by smoking. This was one statement out of a 500-page record. The nurses had testified that it was common for patients to smoke in their rooms and that it was not prohibited. Dr. Muster testified that the possibility of leaks in the oxygen machines could not have had anything to do with the fire. Dr. Hunter indicated that the decedent had been instructed not to smoke for his general health but that he only had three months to one year to live anyway. St. Joseph Hospital answered interrogatories by saying that it had no record of a written warning being given regarding flammability of the gowns. The whole record must be reviewed in determining whether the error was reasonably calculated to cause and probably did cause the rendition of an improper verdict. *Wilson v. Texas Employers Insurance Association*, 407 S.W.2d 804, 806 (Tex.Civ.App.1966, writ ref'd n.r.e.). After reviewing the entire record, we hold that it was not reversible error to refuse to grant the mistrial.

■ We consider that the plaintiff's cause based on strict liability is separable from her negligence and breach of warranty causes and may be tried separately without unfairness to the parties. Rule 434, Texas Rules of Civil Procedure.

We order the issues as to strict liability severed and remanded to the trial court; in all other respects, we affirm the judgment.