Jay DOOLEY

v.

**PARKER–HANNIFIN CORPORATION, Alias: Parker–Bertea Aerospace Group; Metal Bellows, Division of Parker–Bertea Group; and John Does I–X, alias.**

Civ. A. No. 91–0330–T.

United States District Court, D. Rhode Island.

April 2, 1993.

Amato A. DeLuca, Mandell, Goodman, De-Luca & Schwartz, Providence, RI, for plaintiff.

Raymond A. LaFazia, Providence, RI, for defendants.

### MEMORANDUM AND ORDER

TORRES, District Judge.

This is a products liability action, in which Jay Dooley seeks damages for personal injuries caused by a machine allegedly owned by Parker–Hannifin Corporation ("Parker–Hannifin"). Parker–Hannifin has moved for summary judgment. For the reasons set forth in this memorandum, that motion is granted.

#### Background

In 1988, Dooley worked for Tubodyne Co., a company that produced metal tubing for industrial use. The tubing made for each customer was formed by a pressing machine fitted with a die specifically designed to satisfy the requirements of that customer. Dooley's job was to operate a pressing machine that produced tubing for Parker–Hannifin.

The machine that Dooley operated had been acquired by Tubodyne when it purchased the assets of American Tube Bending Co. ("American"), Parker–Hannifin's previous supplier. Apparently, the die on that machine had been designed and manufactured by American. Because the die was designed to meet Parker–Hannifin's needs, Parker–Hannifin was charged for the cost of creating it and had the right to take the die if and when it ceased being a customer of American or, later, of Tubodyne.

By early 1988, the die had become worn, making it difficult for the tubing to be held in place during the manufacturing process. Accordingly, Tubodyne asked Parker–Hannifin to underwrite the cost of replacing it. When Parker–Hannifin expressed reluctance to incur the expense of creating a new die, Tubodyne modified the existing die by adding an extension to it that would hold the tubes in place.

On the first day after the extension was added, a tube Dooley was cutting stuck to the underside of the die. As Dooley freed the tube with his left hand, he rested his right hand on the extension. When the machine assembly rose, Dooley's right thumb was crushed between the extension and a bolt on the machine.

Dooley contends that the extension caused his injury because it reduced the clearance between the die and the bolt to a distance that permitted his thumb to be crushed. He further contends that Parker–Hannifin is liable to him for negligence, breach of implied and express warranties and strict tort liability because it was the "owner" of the die. Parker–Hannifin seeks summary judgment on the ground that it did not design, manufacture, sell or distribute the die or extension.

#### Summary Judgment Standard

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Sheinkopf v. Stone,* 927 F.2d 1259, 1261 (1st Cir.1991). The burden is on the moving party to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552. Once the moving party has met its burden, it is the nonmoving party's responsibility to set forth specific facts demonstrating that there is at least one genuine and material issue requiring a trial. *Sheinkopf,* 927 F.2d at 1261 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). In determining whether the case involves one or more disputed genuine and material issues, the Court must view the evidence in the light most favorable to the nonmoving party. *Sheinkopf,* 927 F.2d at 1262 (citing *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989)).

## Discussion

### I. *Negligence Claim*

■ Dooley contends that Parker–Hannifin was the owner of the die and extension and, therefore, had a duty to warn Dooley of hazards associated with his use of the die and to provide adequate safeguards to protect him from these hazards.

■ Whether there is a legally enforceable duty to take precautions to prevent injury to another person is a question of law that must be decided on the basis of the facts of each case. *See Banks v. Bowen's Landing Corp.,* 522 A.2d 1222, 1225 (R.I.1987). Among the factors to be considered are 1) the foreseeability of harm to the Plaintiff; 2) the closeness of the connection between the defendant's conduct and Plaintiff's injury; 3) the policy of preventing future harm; and 4) the extent of the burden to the Defendant and the consequences for the community of imposing a duty of care with its commensurate potential for liability. *Id.*

In this case, consideration of those factors compels the conclusion that Parker–Hannifin had no duty to protect Dooley from damages allegedly attributable to use of the die or the extension. As already noted, Parker–Hannifin played no role in the design or manufac-

ture of the die or extension. Furthermore, neither the die nor the extension was ever in Parker–Hannifin's possession. Both were located at Tubodyne's facility, and both were used and maintained exclusively by Tubodyne. Finally, Dooley was employed by Tubodyne and not by Parker–Hannifin.

In short, Parker–Hannifin had no way of knowing the manner in which Dooley used the die or whether the extension was properly designed. Therefore, it could not be expected to foresee the likelihood that Dooley would be injured. Moreover, because Parker–Hannifin did not design, manufacture or possess the die and had nothing to do with how it was used, there was no connection between Parker–Hannifin's conduct and Dooley's injury. Parker–Hannifin was in no position to prevent future harm to those using the die. In addition, under these circumstances, holding Parker–Hannifin responsible for protecting Tubodyne's employees from risks of injury associated with the use of machines designed and controlled by Tubodyne would be unreasonable and would impose a substantial burden on Parker–Hannifin without any commensurate decrease in the risk of future injuries. Consequently, the Court finds that Parker–Hannifin owed no duty to protect Dooley and cannot be liable to him on a negligence theory.

### II. *The "Products Liability" Claims*

■ Under Rhode Island Law, the "sale" of a product may create a variety of warranties regarding that product. Thus, a warranty of merchantability is implied in a contract for the "sale" of goods if the "seller" is a merchant with respect to goods of that type. R.I.Gen.Laws § 6A–2–314 (1992). Other kinds of express and/or implied warranties may be created when the "seller" makes representations relating to the product, *see* R.I.Gen.Laws § 6A–2–313 (1992), and/or when the "seller" has reason to know that the buyer is relying on the seller's skill and judgment to furnish suitable goods. *See* R.I.Gen.Laws § 6A–2–315 (1992). Breach of those warranties exposes the "seller" to liability for personal injury that proximately results from the breach. *See* R.I.Gen.Laws § 6A–2–715(2)(b) (1992). Responsibility for

personal injury caused by a defective product also may be imposed on one who "sells" the product on the theory of strict liability in tort as set forth in Restatement (Second) of Torts § 402A (1965). *See Ritter v. Narragansett Electric Co.,* 109 R.I. 176, 283 A.2d 255 (1971).

In this case, Dooley concedes that Parker–Hannifin did not "sell" the die or the extension that allegedly caused his injury. However, Dooley asserts that Parker–Hannifin owned the die and extension and therefore is liable for injuries attributable to its alleged defects. In support of that contention, Dooley cites cases from other jurisdictions that have imposed liability on owners who lease or lend defective products to others. *See, e.g., Dunn v. Penrod Drilling Co.,* 660 F.Supp. 757, 768 (S.D.Tex.1987) (strict liability under § 402A extends to lessors of defective products); *Ross v. La Coste de Monterville,* 502 So.2d 1026 (La.1987) (applying Louisiana's strict liability statute to landlord's gratuitous loan of defective ladder to tenant); *Thomas v. St. Joseph Hospital,* 618 S.W.2d 791 (Tex. Civ.App.1981) (hospital may be strictly liable for supplying a defective hospital gown to patient); *Fakhoury v. Magner,* 25 Cal. App.3d 58, 101 Cal.Rptr. 473 (1972) (lessor of furnished apartment strictly liable for injuries suffered due to defect in furniture); *Perfection Paint & Color Co. v. Konduris,* 147 Ind.App. 106, 258 N.E.2d 681 (1970) (paint company that "gratuitously" supplied plaintiff with lacquer to help paint adhere to surface could be liable under § 402A); *Price v. Shell Oil Co.,* 2 Cal.3d 245, 85 Cal.Rptr. 178, 466 P.2d 722 (1970) (commercial lessor of gas truck strictly liable for defective ladder attached to truck); *Bachner v. Pearson,* 479 P.2d 319 (Alaska 1970) (lessor of airplane strictly liable for defects in airplane).

The cases cited by Dooley are readily distinguishable from the present case. In most of them, the defective item was leased by a party in the business of leasing such products or was supplied incident to a sale of other goods or services. Thus, liability was not predicated on mere ownership of the items.[1] Rather, it was predicated on the fact that the suppliers placed the products in the stream of commerce by means of transactions very similar to sales. *See, e.g., Dunn,* 660 F.Supp. at 768 ("A crucial element required to establish products liability in Texas is that the product producing injury or damage must enter the stream of commerce."); *Thomas,* 618 S.W.2d at 796 ("Lessors and bailors of unreasonably dangerous products have been held liable in wrongful death actions on the theory that, while they are not sellers of the product, they introduce it into the stream of commerce."); *Bachner,* 479 P.2d at 327 (commercial lessors are liable for defective products in strict liability because they act "much like the retailer or manufacturer in placing products in the stream of commerce"). *See also Brimbau v. Ausdale Equipment Rental Corp.,* 440 A.2d 1292, 1298 (R.I.1982); *Cintrone v. Hertz Truck Leasing and Rental Service,* 45 N.J. 434, 212 A.2d 769, 775 (1965) ("Warranties of fitness are regarded by law as an incident of a transaction because one party to the relationship is in a better position than the other to know and control the condition of the chattel transferred and to distribute the losses which may occur [due to defects].").

In all of the cases Dooley cites, the defendant initially had possession and control of the item and later transferred it to the Plaintiff. Consequently, the defendant was in a better position than the user to know of any defects in the product and to protect against the risk of injury.

As already noted in this case, Parker–Hannifin did not engage in any transaction remotely resembling a sale. Nor did it place the die and/or extension in the stream of commerce. Finally, it never had possession of the die and/or extension and, therefore, was in no position to learn of or guard against any defects. Under these circumstances, the principles that justify the imposition of strict liability or liability for breach of

---

**1.** There is some question whether Parker–Hannifin was the "owner" of the die or the extension that allegedly caused Dooley's injury. Parker–Hannifin had limited rights over the die and extension. It had the right to take the die when it terminated its relationship with Tubodyne, and Tubodyne could not modify the die without Parker–Hannifin's consent. Parker–Hannifin did not possess, maintain or use the die or extension at any time.

warranty on one who is neither a manufacturer or seller are inapplicable.

### Conclusion

For all of the foregoing reasons, the defendant's motion to dismiss is granted.