Frederick SCHEIBE, Plaintiff,

v.

**FORT JAMES CORPORATION f/k/a James River Corporation, Defendant/Third–Party Plaintiff,**

v.

**Environmental Dynamics Corporation and Printpack, Inc., Third–Party Defendants.**

No. C.A.01–371–JJF.

United States District Court, D. Delaware.

Aug. 7, 2003.

Michael Weiss, Esquire of Michael Wiess, Esquire, Wilmington, DE, Of Counsel: Larry Bendesky & Michael J. Hopkins, Esquires of Saltz, Mongeluzzi, Barrett & Bendesky, P.C., Philadelphia, Pennsylvania, PA, for Frederick Scheibe.

Richard D. Abrams, Esquire of Heckler & Frabizzio, Wilmington, DE, for Fort James Corporation.

William J. Cattie, III, Esquire of Cattie & Fruehauf, Wilmington, DE, for Environmental Dynamics Corporation.

Stephen P. Casarino, Esquire of Casarino, Christman & Shalk, P.A., Wilmington, DE, for Printpack, Inc.

### MEMORANDUM OPINION

FARNAN, District Judge.

Pending before the Court is the Motion for Summary Judgment (D.I. 62) filed by Fort James Corporation [1] ("Fort James"). For the reasons discussed below, the Motion (D.I. 62) will be granted.

### BACKGROUND

This lawsuit arises out of December 29, 1999, incident at the Printpack, Inc. ("Printpack") manufacturing plant in New Castle, Delaware ("the Plant"). On that date, Plaintiff Frederick Scheibe, a Printpack employee, lost several fingers when his hand came into contact with the rotary

---

1. The Fort James Corporation was formally known as the James River Corporation.

airlock of a dust collector he was trying to unjam. (D.I. 67 at 3).

The dust collector pulled waste products from a plastic extrusion line. (D.I. 64 at A1–A4). The rotary airlock had rotating blades that expelled the waste products down an exhaust chute which was capped by welded metal bars ("the Guard"). *Id.* When Mr. Scheibe was injured, the entire exhaust chute and guard that blocked access to the rotary airlock had been unbolted and removed to aid in unjamming the dust collector. (D.I. 74, Ex. E at 78–79; Ex. G at 47). Additionally, Printpack's lock-out procedures had not been followed before the Guard was removed. (D.I. 74, Ex. G. at 47). Had the lock-out procedures been followed, the rotary airlock would have been de-energized (*i.e.,* stopped spinning) before the Guard was removed. *Id.* at 50.

The Plant had previously been owned by Fort James. In April 1996, Fort James sold the Plant to Printpack. (D.I. 64 at A15). Before selling the Plant, Fort James placed an order with Environmental Dynamics, Inc. ("Environmental Dynamics") for the dust collector which eventually caused Mr. Scheibe's injury ("the 42 Line Dust Collector"). Environmental Dynamics subsequently invoiced Fort James for the 42 Line Dust Collector, but Printpack admits that it "presumably" paid for the dust collector. (D.I. 74 at 2).

The 42 Line Dust Collector was installed and modified in July 1996, after the sale of the Plant to Printpack. (D.I. 64 at A15–A16). The installation was performed by Environmental Dynamics, and during the installation process, Timothy Istenes, a Printpack employee, requested that Environmental Dynamics install a longer exhaust chute to prevent someone from reaching in the chute and getting hurt by the rotary airlock. *Id.* at A7–A8. The exhaust chute was capped by 1/4 inch thick steel bars welded 3/8 of an inch apart, and the entire chute and guard assembly was attached to the rotary airlock by twelve bolts. (D.I. 74, Ex. B at 54–55; Ex. F).

In 1994, Thomas Smith, a Fort James employee, lost the tips of two of his fingers when clearing a jam in the 43 Line Dust Collector of the Fort James facility. (D.I. 67 at 6). The 43 Line Dust Collector was not designed or manufactured with a guard in place to prevent injuries (D.I. 74, Ex. C at 26–28, Ex. D at 95); however, after Mr. Smith's accident, a guard was installed. (D.I. 74, Ex. C at 26–28).

On June 5, 2001, Mr. Scheibe filed the instant lawsuit against Fort James, claiming negligence, breach of warranty, and failure to warn. (D.I. 1). On July 19, 2002, Fort James filed a Third Party Complaint against Environmental Dynamics (D.I. 34), and on September 17, 2002, Fort James amended its Third Party Complaint to add a claim against Printpack (D.I. 41).

Fort James filed the instant Motion for Summary Judgment (D.I. 62) on February 10, 2003, and Mr. Scheibe filed his Response Brief (D.I. 67) on February 24, 2003. On March 6, 2003, the Court held a Pretrial Conference with the parties and ordered Mr. Scheibe and Fort James to file supplemental briefs on the issue of Fort James' control of the Line 42 Dust Collector. The Court has received the parties' supplemental letter briefs (D.I. 74, 75), and the Motion is now ready for decision.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. *Valhal Corp. v. Sullivan Assocs., Inc.,* 44 F.3d 195, 200 (3d Cir.1995). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

To defeat a motion for summary judgment, Rule 56(c) requires the non-moving party to show that there is more than:

some metaphysical doubt as to the material facts.... In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations and punctuation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

### I. *Negligence*

By its Motion, Fort James contends that summary judgment is appropriate as to Mr. Scheibe's negligence claim because Fort James owed no duty to Mr. Scheibe. Specifically, Fort James contends that it had no duty to Mr. Scheibe because there is no evidence that Fort James ever had actual custody, ownership, or control of the 42 Line Dust Collector. In response, Mr. Scheibe contends that Fort James was negligent in designing and ordering a dust collector with a motorized rotary airlock that did not have an interlocked guard to prevent the airlock from rotating if the chute was removed from the dust collector. Mr. Scheibe also contends that Fort James was negligent by not taking adequate precautions to prevent his injury in light of its prior knowledge that the dust collector was dangerous. Mr. Scheibe contends Fort James is connected to the 42 Line Dust Collector, and thus owes Mr. Scheibe a duty, because Fort James designed and ordered the dust collector, issued a capital appropriations request to pay for the dust collector, and was billed for the dust collector on July 24, 1996.

■ "A federal court exercising diversity jurisdiction must apply the substantive law of the state whose laws govern the action." *Kleinknecht v. Gettysburg College,* 989 F.2d 1360, 1365 (3d Cir.1993) (citations omitted). Because the injury at issue occurred in Delaware, the Court concludes that Delaware has the most significant relationship to the injury, and accordingly, the Court will apply Delaware law.[2]

■ "In order to be held liable in negligence [under Delaware law], a defen-

**2.** In their briefs, the parties do not address the issue of what substantive law applies to the instant dispute. Both parties rely on *Dooley v. Parker–Hannifin Corp.,* 817 F.Supp. 245 (D.R.I.1993), and *Gavula v. ARA Services, Inc.,* 756 A.2d 17 (Pa.Super.Ct.2000). *Dooley* is a District of Rhode Island diversity case decided under Rhode Island law, and *Gavula* is a Pennsylvania Superior Court case decided under Pennsylvania law. The facts of *Dooley* and *Gavula* have some similarity to the instant case, and the reasoning and holding of both cases favor Fort James; however, neither case would be more than persuasive authority in a Delaware court, and for that reason, this Court will look to cases decided under Delaware law to resolve the instant dispute.

dant must have been under a legal obligation—a duty—to protect the plaintiff from the risk of harm which caused his injuries." *Fritz v. Yeager,* 790 A.2d 469, 471 (Del.Supr.2002). Whether or not a duty of care exists is a question of law to be decided by the Court. *Naidu v. Laird,* 539 A.2d 1064, 1070 (Del.1988) ("The ultimate question of whether such a relationship exists between the parties that the community will impose a legal obligation upon one for the benefit of the other is an issue for the court."). "This determination should be made 'by reference to the body of statutes, rules, principles and precedents which make up the law.'" *Shepard v. Reinoehl,* 2002 WL 31007889 (Del.Super.Sept.6, 2002) (quoting *Prosser and Keeton on Torts* § 37, at 236 (5th ed.1984)). "No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." *Prosser and Keeton on Torts* § 53, at 359. In sum, the Court, after examining the relevant law, must determine whether reasonable persons would agree that Fort James had a duty to protect Mr. Scheibe from the harm he suffered. If the Court determines that Fort James had no duty, then summary judgment is warranted. *Fritz,* 790 A.2d at 471 ("a trial court is authorized to grant judgment as a matter of law because no duty exists.").

■ After reviewing the relevant law and the pertinent facts, the Court concludes that Fort James had no legal duty to protect Mr. Scheibe from the harm he suffered at the Plant. In the Court's view, it is unreasonable to hold Fort James accountable for Mr. Scheibe's injury when Fort James could not control the events leading to the injury.

Mr. Scheibe contends that the risk posed by the 42 Line Dust Collector was foreseeable because of the 1994 injury to a Fort James employee on the 43 Line Dust Collector ("the 1994 Injury"). However, Mr. Scheibe's argument overlooks several key facts. At the time of the 1994 Injury, the 43 Line Dust Collector was not equipped with a guard to prevent employees from reaching into the rotary airlock. (D.I. 74, Ex. C at 26–28, Ex. D at 95). After the 1994 Injury, Fort James had a guard installed on the 43 Line Dust Collector. (D.I. 74, Ex. C at 26–28). This corrective action was intended to prevent the type of injury that was foreseeable to Fort James after the 1994 injury. The 42 Line Dust Collector, which was designed by Environmental Dynamics (D.I. 64 at A27; D.I. 74 at 3 n. 1), included a chute and guard that prevented employees from reaching into the rotary airlock. Thus, by adding a guard to the 43 Line Dust Collector and ensuring that the 42 Line Dust Collector had a guard, Fort James took reasonable steps to prevent the risk of harm that it would have been aware of as a result of the 1994 Injury. For these reasons, the Court concludes that the circumstances of the 1994 Injury did not make Mr. Scheibe's injury foreseeable. *Delaware Elec. Coop. v. Duphily,* 703 A.2d 1202, 1209 (Del.1997) ("A foreseeable event is one where the defendant should have recognized the risk under the circumstances.").

Fort James' lack of control, custody, and ownership of the 42 Line Dust Collector make it unreasonable to find that Fort James had a duty to Mr. Scheibe. Fort James's connection to the 42 Line Dust Collector is tenuous. It is based on the fact that Fort James ordered the equipment and was invoiced for it. The record evidence indicates that Fort James most likely did not pay for and definitely never possessed the 42 Line Dust Collector. It is undisputed that Printpack acquired the

Plant from Fort James prior to the installation of the 42 Line Dust Collector. (D.I. 64 at A15–A16), and that Fort James was not invoiced for the 42 Line Dust Collector until after Printpack acquired the Plant. Even if Fort James had paid the invoice, which is unlikely based on the record evidence, Fort James at no time had control over or possession of the 42 Line Dust Collector. Moreover, Mr. Scheibe's injury occurred three years after Printpack acquired ownership of the 42 Line Dust Collector. During that time, Fort James had no control over modifications to the 42 Line Dust Collector, the training of workers using the 42 Line Dust Collector, or the actions of workers clearing jams in the 42 Line Dust Collector. On the day of Mr. Scheibe's injury, Fort James had no control over, and could not foresee, that Printpack employees would, in violation of the lock-out procedures of their employer, unbolt the guard covering the rotary airlock and attempt to unjam it. Under these circumstances, the Court concludes that it would unreasonable to hold that Fort James had a legal obligation to protect Mr. Scheibe from the harm he unfortunately suffered.

■ The Court finds support for its conclusion in the *Restatement (Second) of Torts* (the *"Restatement"*), which is a source used by Delaware courts when evaluating whether a duty exists. *Fritz v. Yeager*, 790 A.2d 469 (Del.2002) (citing Section 392 of the *Restatement* for a duty of care). Section 351 of the *Restatement* addresses dangerous conditions arising after a vendor transfers possession of land and provides: "[a] vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land by any dangerous condition, whether natural or artificial, which comes into existence after the vendee has taken possession." *Restatement* § 351 (1965).

The Comment to Section 351 explains that the vendor's "responsibility for the subsequent developments and events on the land is terminated. It is shifted to the vendee...." *Id.* cmnt. a. Even if the 42 Line Dust Collector is not considered a condition on land, the Court finds Section 351 instructive to its analysis by way of analogy. In the instant case, the 42 Line Dust Collector was not installed until after Printpack took possession. Under Section 351, the responsibility for this subsequent development belongs to Printpack, not Fort James. Moreover, the responsibility for the subsequent events leading to Mr. Scheibe's injury, *i.e.*, the unbolting of the guard and the violation of Printpack's lockout procedures, also belong to Printpack.

There is a dearth of Delaware case law with analogous facts to the instant case. *Kilgore v. R.J. Kroener, Inc.*, No. Civ.A. 00C–08–147RRC, 2002 WL 480944 (Del.Super. March 14, 2002), has the most similarities. In *Kilgore*, a laborer fell from faulty scaffolding owned and erected by the subcontractor employing him. The laborer sued the subcontractor as well as the general contractor running the worksite alleging they were both negligent. The court first noted that general contractors generally have no duty to protect the employees of independent contractors from the hazards of completing the contract. The court then held that no exception to the general rule of no duty applied because the general contractor did not have "active control" of the scaffolding that caused the harm. In essence, because the general contractor did not own or assemble the scaffolding, the court held it had no duty to protect the laborer from the harm he suffered. The rationale of *Kilgore* also applies to the instant case. The general contractor in *Kilgore* had no control over the scaffolding and, for that reason, had no duty to protect the laborer from being harmed by the scaffolding, and

here, Fort James had no control over the 42 Line Dust Collector and, likewise, had no duty to protect Mr. Scheibe from being injured by it.

For these reasons, the Court concludes that Fort James had no duty to protect Mr. Scheibe from the harm he suffered at the Plant. In the absence of a legal duty, there can be no action for negligence; accordingly, the Court will grant summary judgment as to Mr. Scheibe's negligence claim against Fort James.

## II. *Breach of Warranty*

### A. *Implied Warranty of Merchantability*

Fort James contends that the implied warranty of merchantability does not apply in the instant case because Fort James is not a merchant of dust collectors within the meaning of 6 *Del. C.* § 2–314 (defining a merchant as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction...."). In response, Mr. Scheibe contends the warranty applies because Fort James, based on its knowledge of the flexible packaging business and the machinery, including dust collectors, necessary to engage in that business, is a merchant.

■ "When a purchaser knows of the dangers of a product, or where that danger is obvious, there is no duty to warn and no implied warranty of merchantability arises." *In re Asbestos Litigation (Mergenthaler)*, 542 A.2d 1205, 1214 (Del.Super.1986). Printpack knew of the dangers posed by the 42 Line Dust Collector. On July 26, 1996, Tim Istenes, the Printpack employee in charge of overseeing the installation of the Line 42 Dust Collector, received a letter from Environmental Dynamics explicitly describing the dangers posed by the rotary airlock on the Line 42 Dust Collector (the "July 26 Letter," D.I. 74, Ex. F). The July 26 Letter explained the purpose of the guard and described the warning labels that were attached to the guard at the time of installation (*e.g.,* "DANGER, ROTATING DEVICE," "DO NOT STICK YOUR HANDS INTO VALVE," "WARNING: DANGER") *Id.* The July 26 Letter also notified Mr. Istenes of the 1994 injury to Mr. Smith on the 43 Line Dust Collector. *Id.* Because Printpack knew of the dangers posed by the Line 42 Dust Collector, based on both the July 26 Letter and the warning labels affixed to the dust collector, the Court concludes no implied warranty of merchantability arose as to the Line 42 Dust Collector. *In re Asbestos Litigation (Mergenthaler)*, 542 A.2d at 1214. Accordingly, the Court will grant summary judgment as to Mr. Scheibe's breach of the implied warranty of merchantability claim.

### B. *Implied Warranty of Fitness for a Particular Purpose*

Fort James contends that the implied warranty of fitness for a particular purpose is inapplicable here because Fort James did not own the 42 Line Dust Collector at the time of the sale of the Plant and was not aware that Printpack intended to use the 42 Line Dust Collector for a particular purpose. In response, Mr. Scheibe contends that there is a genuine issue of material fact as to whether Fort James owned the 42 Line Dust Collector and that Fort James knew that Printpack was going to continue to operate the Plant as a flexible packaging facility.

Delaware's Uniform Commercial Code provides that the implied warranty of fitness for a particular purpose applies:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are re-

quired and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

6 *Del. C.* § 2–315.

■ Because the sale of the Plant occurred in April 1996 and the 42 Line Dust Collector was not installed or invoiced by Environmental Dynamics until July 1996, the Court concludes that Fort James did not own the 42 Line Dust Collector at the time of contracting. Thus, no warranty of fitness for a particular purpose arose as to the 42 Line Dust Collector in April 1996 because Fort James could not sell what it did not own. The implied warranty of fitness for a particular purpose only arises upon the sale of goods. Because no implied warranty of fitness arose, the Court concludes that summary judgment is appropriate.

■ Even if the warranty arose, the Court would reach the same conclusion because Mr. Scheibe has failed to provide any evidence to support essential elements of a claim for which he bears the burden of proof. The movant is entitled to summary judgment where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Specifically, Mr. Scheibe has provided no proof that Fort James made any recommendation to Printpack regarding the 42 Line Dust Collector or that Printpack relied on Fort James' skill or judgment. 3A *Anderson on the Uniform Commercial Code* § 2–315:63 at 43 (3d ed. 2002) ("[N]o warranty of fitness for a particular purpose arises when the seller does not make any recommendation whatsoever to the buyer."). Accordingly, the Court will grant summary judgment as to Mr. Scheibe's breach of the implied warranty of fitness for a particular purpose claim.

### C. *Express Warranties*

Fort James contends that it made no express warranties as to the 42 Line Dust Collector. Additionally, Fort James contends that it did not own or possess the 42 Line Dust Collector at the time of the sale of the Plant. In response, Mr. Scheibe contends that any express warranties would be contained in the Asset Purchase Agreement and that Fort James' Motion does not demonstrate the absence of such warranties.

■ In the Court's view, Mr. Scheibe's argument attempts to invert the standard announced in *Celotex Corp. v. Catrett,* where the United States Supreme Court held:

the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Applying the enunciated standard to the instant case, the Court concludes that summary judgment

is appropriate as to Mr. Scheibe's express warranty claim. The Court bases its conclusion on the fact that after an adequate discovery period, Mr. Scheibe has provided the Court with no evidence that Fort James made any express warranties as to the 42 Line Dust Collector. Moreover, Mr. Scheibe bears the burden of proving the existence of any express warranties at trial, and the complete absence of proof as to that issue makes it amenable to summary judgment.

## III. *Failure to Warn*

Fort James contends it had no duty to warn Mr. Scheibe of the danger presented by the rotary airlock on the 42 Line Dust Collector. In response, Mr. Scheibe contends Fort James did have a duty to warn him and that it breached that duty.

■ In Section I of this Memorandum Opinion, the Court concluded that Fort James had no duty to protect Mr. Scheibe. For the same reasons, the Court now concludes that Fort James had no duty to warn Mr. Scheibe of the potential for harm posed by the 42 Line Dust Collector. In the Court's view it is unreasonable to hold Fort James liable for not warning a user injured in 1999 on a piece of equipment Fort James ordered in 1996 and never actually possessed.

Delaware case law supports the Court's conclusion. "When a purchaser knows of the dangers of a product ... there is no duty to warn...." *In re Asbestos Litigation (Mergenthaler)*, 542 A.2d 1205, 1214 (Del.Super.1986).

> when a supplier provides a product it knows to be dangerous to a purchaser/employer whom the supplier knows or reasonably believes is aware of that danger, **there is no duty on the part of the supplier to warn the employees of that purchaser** unless the supplier knows or has reason to suspect that the requisite

warning will fail to reach the employees....

*Id.* at 1212 (emphasis added). "Under Delaware law, the duty to warn extends only to those who can reasonably be assumed to be ignorant of the danger. Where the user has actual knowledge of the alleged danger, there is no duty to warn." *Fritz v. Yeager*, 790 A.2d 469, 471 (Del. Supr.2002).

As discussed in Section II.A of this Memorandum Opinion, Environmental Dynamic's July 26, 1996, letter to Tim Istenes, the Printpack employee in charge of overseeing the installation of the Line 42 Dust Collector, explicitly described the dangers posed by the rotary airlock on the Line 42 Dust Collector (the "July 26 Letter," D.I. 74, Ex. F). The July 26 Letter explained the purpose of the guard and described the warning labels that were attached to the guard at the time of installation (*e.g.*, "DANGER, ROTATING DEVICE," "DO NOT STICK YOUR HANDS INTO VALVE," "WARNING: DANGER") *Id.* In the Court's view, the July 26 Letter and the warning labels it describes demonstrate that Printpack knew of the danger posed by the rotary airlock on the 42 Line Dust Collector. Because it was in Printpack's financial interest to warn its employees of dangers in the workplace, Fort James had no reason to believe Printpack would not do so. Therefore, based on *In re Asbestos Litigation (Mergenthaler)*, the Court concludes that Fort James had no duty to warn Mr. Scheibe. Accordingly, the Court will grant summary judgment as to Mr. Scheibe's failure to warn claim.

## CONCLUSION

For the reasons discussed, Fort James' Motion for Summary Judgment will be granted.

An appropriate Order will be entered.

## ORDER

At Wilmington this 7th day of August 2003, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

(1) Fort James Corporation's Motion for Summary Judgment (D.I. 62) is **GRANTED**;

(2) Printpack, Inc.'s Motion for Summary Judgment (D.I. 58) is **DENIED** as moot;

(3) Environmental Dynamics Corporation's Motion for Summary Judgment (D.I. 60) is **DENIED** as moot.